John W. Brady, County Attorney, v. V. L. Brooks, District Judge, et al.   No. 1495.

Warren W. Moore, District Attorney, v. V. L. Brooks, District Judge, et al.   No. 1496.

Warren W. Moore, District Attorney, v. V. L. Brooks, District Judge, et al.   No. 1497.

John W. Brady, County Attorney, v. V. L. Brooks, District Judge, et al.   No. 1498.

Decided December 4, 1905.

**1.—Attorney-General—Right to Prosecute.**

The legislature has the power to create causes of action in favor of the state and make it the exclusive duty of the attorney-general to prosecute suits thereon, ignoring the district or county attorneys of the county in which they are brought.  (P. 373.)

**2.—Same—Case Limited.**

The expressions of opinion in State v. Moore, 57 Texas, 307, that the county attorney had authority to prosecute the action by the state, exclusive of the attorney-general, were unnecessary to the decision and may be regarded as obiter dicta; and at all events will not be here followed, being practically overruled in Day L. & C. Co. v. State, 68 Texas, 526.  (Pp. 374–377.)

**3.—County and District Attorneys—Constitution.**

Section 21 of article 5 of the constitution, in requiring the county or district attorney to represent the state in all actions, appears to contemplate duties to be performed rather than rights conferred, and, when read in connection with the power to represent the state given the attorney-general by section 22, article 4 of the constitution, will not be held to prevent the legislature from conferring an exclusive right to prosecute certain actions by the state on that officer.  (Pp. 377, 378.)

**4.—Same—Construction.**

The variety and importance of the interests of the state sought to be guarded, the constituencies by whom and duties for which local prosecuting officers are usually selected, and like matters, considered as bearing on the question of the intention of the constitution to forbid the legislature from placing the protection of any of its interests in the hands of the attorney-general instead of such county officers.  (Pp. 378–380.)

Original application to the Supreme Court for writ of mandamus to the district judge.

*Allen & Hart,* for relators.—Const., art. 4, sec. 22; Const., art. 5, sec. 21. The powers of the attorney-general are derived from and he is placed in the provisions of the constitution relating to the executive department, while the county and district attorneys are placed in the judicial department. Const., art. 2, sec. 1; State v. Moore, 57 Texas, 314.

The case of State v. Moore is expressly adhered to and sustained in State v. International & G. N. Ry. Co., 89 Texas, 562; Moore v. Bell, 95 Texas, 156.

Judge Roberts, in the case of the State v. Southern P. Ry. Co., 24 Texas, 118, says: "The district attorney, as we have seen, is required, as a duty imposed on him, to prosecute all actions in which the state is interested in the district court; bringing the action by filing the petition is a part of its prosecution. There is no limitation on his duty in prosecuting suits in the district court in the interest of the state." Just, as we contend, the present constitution confers upon county attorneys the right to represent the state in all cases, both civil and criminal, in the district and inferior courts. There are three limitations upon his authority, (1) the limitation that the attorney-general shall prosecute all suits in regard to charter right of private corporations; (2) the legislature may by law divide the power with the district attorney when there is a district attorney, but with no other officer; and (3), the railroad commission may employ any agency it sees fit to bring suits involving an infraction of the railroad commission law.

The court was discussing in the above instance statutory duties and powers, because the constitution in force at that time did not undertake to define the respective rights and duties of the attorney-general and the district attorney, as Judge Stayton says, in the Moore case, has been specifically done in the present constitution.

The case of Duncan v. State, 67 S. W. Rep., 903, and the contention of the attorney-general in line with that case attempt to give a construction to the constitution which, we think, is untenable, for the very cogent reason that if their construction be correct, then the legislature can do indirectly what it can not do directly, namely, nullify a clear, distinct and specific provision of the constitution. When the constitution says that the county attorney shall represent the state in all cases in the district court, it evidently meant something, but if, by the succeeding sentence, the legislature has the right to take away, under the guise of regulation of the respective rights and duties of the district and county attorneys, powers and duties devolving upon either of those officers and give them to another officer in a different branch of the government, it absolutely puts it in the power of the legislature to nullify the first mentioned provision. We contend that the only reasonable construction that can be given is as indicated above, that the legislature was empowered to divide the powers and duties conferred by section 21, between the county and district attorneys, but had no authority to confer any powers therein given upon any other officer. In the Duncan

case, the Court of Civil Appeals base their decision upon the fact that Motley County was within the judicial district, having a district attorney, in which event they held that the constitution relegates to the legislature the power of defining the respective duties of district and county attorneys, and undertakes to distinguish between the power to represent the state in all cases in the district and inferior courts from the power to inaugurate and institute litigation. The power to prosecute or represent the state, as we have seen according to the language of Judge Roberts, confers the power to institute or file a suit.

Again the Duncan case proceeds upon the theory that discretion and power involved in the institution of suits to forfeit charters has been committed to the attorney-general and also suits to enforce penalties incurred under the railroad commission law. These cases, we have seen, were decided upon the proposition that the constitution and not the legislature made these exceptions.

As to the right to madamus, see Terrell v. Greene, 88 Texas, 545.

*Warren W. Moore,* also for relators.—The following questions are believed to be involved in the application for a writ of mandamus in this case:

1. Is article 5, section 21 of the constitution conferring upon the county attorney the right to represent the state, etc., self executing, and can the county attorney institute a suit in the district court, by virtue of the constitution alone and without legislative authority, and is such power exclusive?

2. Do the words "represent the state in all cases in the district and inferior courts in their respective counties" authorize the county attorney to institute suits?

3. Do the words "perform such other duties as may be required by law" used in article 4, section 22, declaring powers and duties of the attorney-general authorize the legislature to empower him to represent the state in the district court in suits under the Love and Kennedy bills, or is the power conferred by such general words limited by the specific words granting power to the county attorney found in article 5, section 21, above referred to.

It is contended by petitioner that the first two questions are answered affirmatively in favor of the petitioner by the case of the state against Moore in the 57th Texas and the third question is answered against the contention of the attorney-general in the case at bar, and in favor of the contention of petitioner; and that, after what appears from the reading of the opinion of the State v. Moore, to have been a calm, lengthy and deliberate consideration of the foregoing questions, the decision of each and every one of the questions being necessary to a decision of the case, it is the conclusion, that the general words used in article 4, section 22, speaking of the attorney general, to wit: "and perform such other duties as may be required by law" are only to be construed as authorizing the legislature to empower the attorney-general to perform the duties not conferred by the constitution upon other officers, based upon the conclusion that the specific language of article 5, section 21,

to wit: "the county attorney shall represent the state in all cases in the district court and inferior courts in their respective counties," grants to the county attorney an exclusive authority to conduct proceedings in the district court for the state without legislative action and notwithstanding the legislative authority conferred upon the attorney-general by article 2802a, Revised Statutes, 1879, to sue any and all "officers or individuals, who are in default, or arrears for the recovery of funds in their hands," being the article construed in the case of the State v. Moore.

At the time the cause of action accrued in the cases out of which the State v. Moore arose and at the time such cases were instituted there was no legislative authority for the county attorney to represent the state in any civil cases in the district court, and there was express legislative authority for the attorney-general to bring such suit by virtue of said article 2802a, Revised Statutes, 1879. The attorney-general brought the said suits against officers in default and in arrears for the recovery of certain funds in their hands, under the said act of the legislature, making it his duty to do so, and when he had done so the county attorney of Travis County, the appellee, Moore, in the case of the State v. Moore, moved that he be recognized as the proper officer to control the suits so brought by the attorney-general, and the trial court recognized his right to do so, and excluded the attorney-general. After the county attorney of Travis County had recovered judgment in said suits and retained commissions upon money collected upon said judgment, the attorney-general made a motion in said suits to have the said county attorney pay over to the treasurer of the state the commissions retained by him, mainly upon the ground that the county attorney had no authority to prosecute said suits.

Now the suits in the district court which gave rise to the facts upon which the application for a writ of mandamus is sought herein were instituted as in the Moore case by the attorney-general and are like those suits to recover tax money. It is therefore submitted that the case in which the appellee, Moore, in State v. Moore, intervened by motion is of the same class and character of cases as the suits which give rise to the application for the writ of mandamus in the case at bar.

With these matters in view the petitioner contends that Justice Stayton deliberately held, particularly upon page 312 that the constitution expressly conferred upon the district and county attorneys the exclusive authority to represent the state in suits to recover tax money; and that an act authorizing the attorney-general to do so was unconstitutional and void, and as there was no legislative authority for the county attorney to prosecute such a suit, he must have held that the constitution was self-executing.

To show how fully the case of the State v. Moore was considered, upon examination we find the opinion in thirteen printed pages, and it discusses every proposition upon which the opinion is based at length by itself and in connection with one another, and in addition on page 316 supports the conclusions referred to by certain persuasive suggestions, such as that district and county attorneys are required to give

Vol. XCIX. Supreme—24.

bond to secure the payment by them of all funds collected into the state treasury and requiring them to make reports of the collection of such funds and fixing the time in which they will pay the money after collecting the same. While there are no such requirements in reference to the attorney-general.

The case of the State v. Moore has been referred to with approval in every case in which reference to it has been made. Even in the case of the State v. Duncan, 67 S. W., on top of page 905, it is said: "While the power to institute as well as to maintain has been expressly provided in cases such as were involved in consideration of the case of the State v. Moore." After referring to the distinction above referred to, arising out of the fact of a district and county attorney in the same district, the court withdraws from that conclusion and bases the decision upon the fact that it is distinguishable from the Moore case because the Moore case was a suit for tax money and the Duncan case was a suit in reference to unappropriated public domains; and base their decision upon a construction of article 7, section 4, of the constitution, and in this view the Duncan case could be harmonized with the case of Moore v. Bell, 95 Texas, 157, where it is held that the powers conferred upon the legislature by the railroad commission amendment to the constitution were restrictive of the powers granted county and district attorneys by section 21, article 5, of the constitution, and as said in the case of Moore v. Bell, such construction was in harmony with the construction of the case of the State v. Moore, because it was said in the latter case: "That the constitution might empower the legislature to withdraw power from the hand in which the constitution placed it and confer the same upon another officer, or tribunal, cannot be questioned." But it further said that this must be expressly done by the constitution. And in the case of the State v. Moore it is said that in reference to suits for money the constitution had not done this.

*R. V. Davidson,* attorney-general, and *W. E. Hawkins* and *Claude Pollard,* assistants, for respondent.—Section 22, article 4, of the constitution of Texas, considered by itself alone, and without regard to article 5, section 21, of the constitution, is broad enough to authorize the legislature to confer upon the attorney-general alone the authority in question. State v. Moore, 57 Texas, 307.

The constitution of Texas does not confer upon the district attorney any authority whatever. Constitution of Texas, and especially section 21, of article 5, supra. State v. Allen, 32 Texas, 273; Spencer v. Galveston County, 56 Texas, top of page 391.

Provisions of section 21, article 5, of the constitution of Texas, relative to the rights, powers and duties of county and district attorneys in representing the state in cases in the district and inferior courts in their respective counties, have no reference or application whatever to suits arising under chapter 141, supra, or chapter 148, supra, but, on the contrary, apply to cases in which the county has a direct interest, in contradistinction to cases in which some feature of the maintenance or

operation of the state government is involved. Duncan v. State, 67 S. W., 904.

In section 21 of article 5, supra, the framers of the constitution in using the language "county attorneys shall represent the state in all cases in the district and inferior courts in their respective counties," ending with a semicolon, meant no more than to confer upon the county attorney authority to represent the state in counties where there is no district attorney.

In Travis County we have a district attorney as well as a county attorney. Consequently, the above quoted provision from article V, section 21, has no application, to Travis County, or to the county attorney or to the district attorney of Travis County, or to cases arising under either of the chapters above mentioned; and the only portion, if any, of said section 21, which is applicable to the question before the court is the portion following the semicolon, wherein it is provided that "if any county shall be included in a district in which there shall be a district attorney, the respective duties of district attorneys, and county attorneys, shall, in such county, be regulated by the legislature."

Hence, it follows that insofar as section 21 is concerned the question of who shall have authority to bring and prosecute suits, under either of said chapters of the acts of the twenty-ninth legislature, is by the constitution relegated to the legislature.

The entire question as to who shall represent the state in counties having both a county attorney and a district attorney is solely and absolutely within legislative power and discretion, except in cases in which that power is by the constitution specifically conferred upon the attorney-general. Constitution of Texas, art. IV, sec. 22; Constitution of Texas, art. V, sec. 21.

The legislature has conferred the authority in question upon the attorney-general, and has not conferred such authority upon any other officer. Chapter 141, Acts 29th Leg. of Texas, page 336; Chapter 148, Acts of the 29th Leg. of Texas, page 358.

The courts will not declare a law unconstitutional unless it is clearly so, and in cases of doubt the law will be held valid. Stockton v. Montgomery, Dallam, 473; Sutherland v. De Leon, 1 Texas, 304; Orr v. Rhine, 45 Texas, 354; Barker v. Torrey, 69 Texas, 12; Railroad Commission v. Houston, etc., Ry., 90 Texas, 349; Capps v. Garvey, 41 S. W. R., 381; Island City Sav. Bank v. Dowlern, 94 Texas, 389; Baugher v. Nelson, 52 Am. Dec., 694.

Pursuant to the provisions of the portion of section 21, article V, of the constitution of Texas, authorizing the legislature to regulate the respective duties of district attorneys and county attorneys in counties where there is a district attorney, the legislature has regulated said respective duties, insofar as criminal actions are concerned; and the legislature has not regulated such respective duties of county attorneys and district attorneys in civil actions, except in certain classes of cases. Rev. Stat., art. 284; Rev. Stat., art. 287; Code Criminal Procedure, art. 30; Code Criminal Procedure, art. 32.

The rights, powers and duties of the district attorney can not be

conferred, broadened or extended by implication, and he can not have or exercise any right or power, nor be charged with any duty in the absence of constitutional or statutory provision therefor. Constitution of Texas, art. V, sec. 21; also authorities, supra. State v. Allen, 32 Texas, 273; Spencer v. Galveston County, 56 Texas, 391.

In Revised Statutes, article 284, the provision that it shall be the duty of the county attorney "to represent the state in all cases in said court during the absence of the district attorney, and to aid the district attorney—when so requested," being found in a paragraph which was primarily designed to prescribe the duties of the county attorney alone, can not be extended or made to do duty as a basis for the assertion by the district attorney of any power or authority whatever; but in any event said quoted provision refers to only those classes of cases in which the legislature has expressly conferred upon the district attorney authority to represent the state. Rev. Stat., art. 284.

Insofar as may be possible, the provisions in section 22 of article 4, and of section 21, article 5, of the constitution of Texas, regarding the power of the respective officers therein mentioned to represent the state in suits, should be construed together and all upheld. City of Dallas v. Western Electric Company, 83 Texas, 243; City of Oak Cliff v. State, 97 Texas, 383.

Where there is a county attorney and also a district attorney, and the suits to be brought are of the character of those under consideration, the constitution of Texas, as a whole, places upon the power of the legislature no restriction which would prevent it from conferring upon the attorney-general, or the district attorney or the county attorney, power and authority to represent the state in suits in its behalf. City of Dallas v. Western Electric Company, 83 Texas, 243; Moore v. Bell, 95 Texas, 151; Lewright v. Bell, 95 Texas, 157; Duncan v. State, 67 S. W., 903.

In section 22, article 4, of the constitution of Texas, the clause declaring that the attorney-general shall "perform such other duties as may be required by law," while perhaps less explicit and specific, is as express in its terms, as is section 21, article 5, of the constitution of Texas; and in connection with the statutes authorizing the filing of the suits for taxes in which relators claim the right to represent the state, confers upon the attorney-general as full power and authority to represent the state in those cases as section 21 of article 5, of the constitution confers upon the county or district attorney to represent the state in the cases to which it applies. See authorities cited above.

That portion of chapters 141 and 148, respectively, of Acts of the twenty-ninth legislature, of Texas, which seeks to confer upon the attorney-general authority to file and prosecute suits for taxes, penalties and forfeitures mentioned in said chapters, respectively, is not in conflict with article 2, of the constitution of Texas, which distributes the powers of government. Art. 2, constitution of Texas; chapters 141 and 148, Acts of the 29th Leg. of Texas.

Section 22 of article 4, of the constitution expressly permits the legislature to confer upon the attorney-general, in addition to the

specific powers conferred upon that officer by the constitution itself, such additional powers and authority as the legislature may see fit; and that branch of the government has accordingly conferred upon the attorney-general alone, authority to bring the suits in question.

GAINES, CHIEF JUSTICE.—These cases present substantially the same questions and have been argued and submitted as one.

The questions are as to the rights of the county attorney of Travis County and of the district attorney of the twenty-sixth judicial district of the state of Texas, to prosecute certain suits brought by the attorney-general to recover taxes and penalties under acts passed at the last session of the legislature.

On the 27th day of October, 1905, the attorney-general of the state of Texas brought a suit in the name of the state of Texas against the Higgins Oil & Fuel Company, a corporation, to recover a tax and penalties alleged to have accrued to the state under and by virtue of the provision of an Act of our present legislature commonly known as the "Kennedy Bill." On the 8th day of November, thereafter, the district attorney and the county attorney of Travis County appeared in court and filed a joint motion praying to be allowed to prosecute the suit and that the attorney-general be excluded from participation in such prosecution. The court (the Hon. Victor L. Brooks, judge of the twenty-sixth judicial district, presiding), overruled the motion.

Again on the 24th day of November, 1905, the attorney-general at the request of the comptroller of public accounts filed in the district court of Travis County a suit against the Houston & Texas Central Railroad Company to recover penalties provided for by an Act passed at the last regular session of the legislature, commonly called the "Love Tax Bill," for failure to pay the tax imposed by that Act. On the 28th day of November, the district attorney and county attorney filed in that court a similar motion to that filed in the former case, which was also over-ruled, the same judge presiding.

The district attorney and the county attorney have each filed a separate petition in each of the cases to compel by the writ of mandamus the presiding judge of the court to admit them to prosecute jointly each of the two cases and to exclude the attorney-general from participating in such prosecution.

The Act which imposes a tax upon the gross receipts of railroad companies, called the "Love Bill," after fixing the tax to be imposed and providing for certain reports to the comptroller, provided as follows: "Sec. 5. The attorney-general is authorized and required upon request by the comptroller, to bring suit in the name of the state, in Travis County, against the proper parties defendant, to recover all taxes, penalties and forfeitures mentioned in this Act, and venue and jurisdiction of such suits is hereby expressly conferred upon the courts of Travis County. Service of all process issued in such suits may be had upon any officer or agent of such person, firm, association of persons, corporation, or receiver thereof, within this state, and such service shall in all respects be held legal and valid." (Laws, 1905, p. 338.) The

Act of April 17, 1905, commonly known as the "Kennedy Bill" provides a tax upon the gross receipts of individuals and corporations, pursuing various occupations and for making reports to the comptroller. It also prescribes penalties for the failure to make the reports and for the failure to pay the tax. The taxes and penalties in the language of the Act are to be "sued for by the attorney-general in the name of the state" and the venue is given to the courts of Travis County. (Laws of 1905, pp. 358, et seq.)

It is by virtue of the authority granted by these statutes that the attorney-general has assumed to act in these cases. However, the claim of the relators is that the action of the legislature insofar as it attempts to confer authority upon the attorney-general to prosecute the suits is prohibited by the constitution. In support of their contention they rely upon section 21 of article 5 of the constitution, which, insofar as it bears upon the question, reads as follows: "A county attorney, for counties in which there is not a resident criminal district attorney, shall be elected by the qualified voters of each county, who shall be commissioned by the governor, and hold his office for the term of two years. In case of vacancy the commissioners' court of the county shall have power to appoint a county attorney until the next general election. The county attorneys shall represent the state in all cases in the district and inferior courts in their respective counties; but if any county shall be included in a district in which there shall be a district attorney, the respective duties of district attorneys and county attorneys shall, in such counties, be regulated by the legislature. The legislature may provide for the election of district attorneys in such districts as may be deemed necessary, and make provision for the compensation of district attorneys and county attorneys; provided, district attorneys shall receive an annual salary of five hundred dollars, to be paid by the state, and such fees, commissions and perquisites as may be provided by law. County attorneys shall receive as compensation only such fees, commissions and perquisites as may be prescribed by law." They further claim that in the case of the State v. Moore (57 Texas, 307), the question was authoritatively decided by this court adversely to the contention of the attorney-general. We will first dispose of the question of the authority of that decision. The statute in force at the time the question arose made it the duty of the attorney-general to institute or to cause to be instituted, proceedings against all officers charged with the collection of money belonging to the state for the recovery of all arrears which might appear to have accrued. (Rev. Stat., 1879, art. 2802a.) Proceeding under the supposed authority attempted to be conferred by this statute, the attorney-general then in office brought suit in the district court of Travis County to recover of a defaulting tax collector and the sureties upon his official bond money which had been collected by him, but which he had not paid into the treasury. E. T. Moore, then the county attorney of Travis County, filed a motion in the court praying that he be allowed to prosecute the suit as attorney for the state. The motion was granted. He prosecuted the suit to a successful termination, and collected the sum adjudged to the state. Believing that he was entitled

to commissions under the law, he paid the money collected into the treasury less the supposed commissions, which he retained. The attorney-general thereupon filed a motion against him in the same court for the recovery of the sum so withheld. The court overruled the motion and gave judgment for the defendant therein, whereupon the attorney-general appealed the case to the Supreme Court. Upon the appeal the court reversed the judgment of the trial court and rendered judgment in favor of the state against Moore. In reaching this conclusion, the court in its opinion undertook to determine two questions: holding first, that the county attorney was entitled to prosecute the suit to the exclusion of the attorney-general; and second, that there was no law then in force which allowed the county attorney commissions in a case of that character. Now, if the court had held that the county attorney was not entitled to prosecute the suit (which it did not hold) and also that in no event was he entitled to commissions in such a case (which it did hold), then the opinion would have been authoritative upon both questions. Because if it could be said that the decision of the first was not authority, for the reason that the decision of the second rendered a determination of the first unnecessary, then the same should also be said of the decision of the second question, so that the decision would be authority upon neither question. But on the contrary, in such a case, the decision of each of the two questions supports the judgment of the court and should therefore be deemed an authoritative determination of each of the points. But in the Moore case, after deciding that there was no provision of law allowing compensation to the county attorney in such a case, a holding that he was entitled to prosecute the suit could not possibly lead to any result so far as the judgment in that case was concerned and therefore was not necessary to the decision of the case. The judgment was not based upon the decision of that point and could not have been. We therefore conclude that the propositions announced in the opinion of the court upon that question are in the nature of obiter dicta and can not be deemed conclusive authority. But should we be mistaken in this conclusion, we are of opinion that for reasons hereinafter to be stated, we should decline to follow the decision on the point in question announced in the Moore case. In no event would we be understood as holding that an opinion by an able court upon a point carefully considered, and especially one by the able and lamented jurist, who spoke for the court in that case, should be lightly disregarded.

But it seems to us that in the later case of the Day Land & Cattle Company against The State (68 Texas, 526), the ruling upon the point in question in the Moore case was practically overruled. There the question was as to the right of the attorney-general to prosecute a suit, on behalf of the state, to cancel patents to certain lands in Greer County, issued by the officers of the state. In passing upon the question the same eminent judge, who delivered the opinion in the Moore case, said: "It is claimed that neither the attorney-general nor the district attorney, in the absence of direction so to do from the legislature or the executive of the state, had power to institute and maintain this action. . . .

Neither the constitution nor the general laws defining the powers and prescribing the duties of the attorney-general and of district attorneys, in terms, empower either of these officers to institute and maintain a suit of this character; nor do we find any law in force at the time this suit was brought, which directed them or either of them to institute it.

"Finding no express law which authorized either of those officers to institute and maintain the suit, it would be difficult to hold that either of them had the implied power resulting from the general grants of power or imposition of duties. It may be that in the exercise of the general powers conferred upon the governor of the state, as its chief executive officer, that he would have the power to require the attorney-general to institute or cause to be instituted a suit of this character, when, in his judgment, the welfare of the state required it, even though the legislature had not so directed; but in a government in which the duties of all officers, as well as their powers, are defined by written law, no power ought to be exercised for which warrant is not there found. . . . .

"The Act of April 1, 1887 (General Laws, p. 101), after providing for the cancellation of patents issued for lands situated in Greer County, located by virtue of 'veteran' certificates, and for the issuance of certificates to the holders of such patents, declares 'that nothing in this Act shall be construed as requiring or authorizing the attorney-general to dismiss any suit now pending for the cancellation of said patents, nor to prevent him from bringing other suits for such purposes.' Thus we have a clear recognition, by the legislature, of the power of the attorney-general to institute and maintain in the name, and on behalf of, the state, this and like suits, and to institute others for the same purpose. The state doubtless has the right, by suit, to protect any property right vested in it, as fully as has any person; and this suit was brought in its name and on its behalf, by persons claiming to act as its officers or agents.

"The Act to which we have referred bears conclusive evidence that the legislature knew that this suit, or similar suits, were pending, and it must have been cognizant of all the facts attending the institution of such suits. This being true, if it be conceded that neither the attorney-general nor the district attorney was empowered to institute the suit at the time this was done, nevertheless the state has ratified their Act, and will be bound by the result as fully as though they had the power which they assumed to exercise. This ratification is retroactive, and the suit must stand as though the attorney-general and district attorney had express authority to institute and maintain it." (68 Texas, 533.) Now it is clear that if the legislature had the power to ratify the Act of the attorney-general in bringing and prosecuting that suit, it had the power to have conferred original authority upon that officer to do so. It follows, that section 21 of article 5 of the constitution did not deprive the legislature of the authority to empower the attorney-general to bring suits on behalf of the state. Indeed, since the decision of the case last cited, there have been numerous suits prosecuted by the attorney-general to recover money and lands for the state, in which his authority has not been questioned. (See Galveston, H. & S. A. Ry. Co. v. State, 77 Texas, 367; Galveston, H. & S. A. Ry. Co. v. State, 81 Texas, 572; Galveston,

H. & S. A. Ry. Co. v. State, 89 Texas, 340; Houston & T. C. Ry. Co. v. State, 89 Texas, 294; Houston & T. C. Ry. Co. v. State, 90 Texas, 609; State v. O'Connor, 96 Texas, 484; Houston & T. C. Ry. Co. v. State, 41 S. W., 157, in which a writ of error was refused by this court, to which many others might be added.)

However, we are of opinion that the ruling in the Day Land & Cattle Company case is correct. We recognize the cogency of the reasoning and the ability shown in the opinion of Judge Stayton in the Moore case—an ability characteristic of that eminent judge—but the vice in the argument (and we use the term with the utmost deference) consists, as we think, in concluding that section 21 of article 5 of the constitution manifests the intention to confer upon the county attorneys, or at the will of the legislature the district attorneys, the exclusive authority to prosecute or defend every suit in the district and inferior courts, in which the state may be a party, except those of course, in which the authority is expressly given by the constitution to the attorney-general. The language in section 21 of article 5 that "the county attorneys shall represent the state in all cases in the district and inferior courts in their respective counties" is certainly very broad. In the same sentence it is provided "that if any county should be included in a district in which there shall be a district attorney" their "respective duties shall be regulated by the legislature"—from which it is to be inferred that the framers of the constitution may have had in mind duties to be performed rather than a privilege to be conferred. Might it not at the same time be considered that the legislature would have the power to relieve them in exceptional cases of a part of such duties and to devolve them upon the attorney-general by virtue of section 22 of article 4. That section is as follows: "The attorney-general shall hold his office for two years and until his successor is duly qualified. He shall represent the state in all suits and pleas in the supreme court of the state in which the state may be a party, and shall especially inquire into the charter rights of all private corporations, and, from time to time, in the name of the state, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power, or demanding or collecting any species of taxes, tolls, freight or wharfage not authorized by law. He shall, whenever sufficient cause exists, seek a judicial forfeiture of such charters, unless otherwise expressly directed by law, and give legal advice in writing to the governor and other executive officers, when requested by them, and perform such other duties as may be required by law." Now we do not controvert the proposition laid down in the Moore case, that if section 21 of article 5 should be construed as conferring upon county and district attorneys the exclusive power to represent the state in all cases, except those in which the attorney-general is expressly authorized to act, then the legislature would be prohibited from subtracting from or abridging the powers so conferred. But in our opinion that article does not necessarily control the section which defines the powers and duties of the attorney-general. The words, "he shall . . . perform such other duties as may be defined by law," are as broad as those employed in section 21 of article 5; and if unrestricted would empower the legislature to authorize

him and to make it his duty to represent the state in any case in any court. That section 21 of article 5 does place an important restriction upon that language we do not doubt; for example, in our opinion, the legislature could not take away from the county attorneys so much of their duties as practically to destroy their office. Now it is not un-reasonable to presume that when the framers of the constitution came to formulate the section which defines the duties of county and district attorneys, if the objection had been urged that the powers conferred were too broad, and would deprive the state of having suits of the greatest importance prosecuted by its attorney-general, the reply would have been that the power expressly given to the legislature to impose upon the attorney-general duties in addition to those expressly defined, was suffi-cient to enable that body to provide that that officer should represent the state in any class of cases where his services should be deemed requisite. So as to voters who adopted the constitution. If the same objection had been interposed by them to the constitution as submitted for their rati-fication, namely—that section 21 of article 5 gave too much authority to the officers therein named, they would in all probability have been satisfied upon that matter, by having it pointed out to them, that sec-tion 22 of article 4 authorized the legislature to restrict the powers given by section 21, by conferring them in part upon the attorney-general. The voters as a rule are unlearned in the law and as persons of that class would reasonably construe the constitution upon which they vote, such ought to be the construction of the courts. All provisions of the constitution in relation to the same subject-matter must be construed to-gether. We attach no importance to the fact that the definition of the duties and powers of the attorney-general are placed in article 4, which is the article devoted to the executive department of the state govern-ment. The duties imposed upon him are both executive and judicial, that is, they are judicial in the sense, that he is to represent the state in some cases brought in the court. The very name imports, even in ordinary language, that he is the chief law officer of the state and is that in use in all common law statutes to designate such officer. So article 5, the judiciary article, embraces the definition of the duties of the sheriffs and clerks of the courts, whose powers and duties are execu-tive. Section 22 of article 4 might appropriately have been placed in article 5, and we think it should be construed precisely as if it had been so placed.

Now we apprehend that no one could read the two sections of the constitution which we have quoted, without having a doubt as to the extent to which the legislature could go in conferring additional powers upon the attorney-general. That opens the two sections to construction.

" 'It is a sound principle' say the Court of Appeals in New York, 'that such a construction ought to be put upon a statute as may best answer the intention which the makers had in view; and that is sometimes to be collected from the cause or necessity of making it, at other times from other circumstances. Whenever the intention can be discovered it ought to be followed, with reason and discretion, in its construction, although such construction may seem contrary to its letters.' " (Tonnele v. Hall, 4 Comstock, 140.) To discover what was intended by section 21 of

article 5, construed in the light of section 22 of article 4, we must look to the reason of the provisions, as deducible from the interests of the state which were sought to be guarded, and that construction ought to be adopted which will best safeguard the varied and important rights to be affected.

The constitution was framed for a state of immense territory, in which, up to this time, there has been established more than two hundred organized counties. It possessed by undisputed title a vast public domain, and besides had claim to immense areas in its southwest portion to which private claims were asserted, under supposed grants from the former governments. It also claimed an indebtedness of large sums from certain railroad companies for money lent them. In fact, no state of this Union has since 1875 had more varied and important litigation, litigation the character and extent of which the framers of the constitution should have foreseen and probably did foresee. Now let us ask the pointed question: Is it reasonable to suppose that it was the purpose to entrust absolutely the important function of representing the state as an attorney in all cases in which the state should be a party to the numerous county attorneys or to the district attorneys, should the legislature see fit to create that office for certain districts, elected as the case might be in their respective counties or districts, or to a general state officer, like the attorney-general, elected by the people of the whole state? To ask the question is to answer it. In saying this we mean no disparagement to those who have filled and who may now fill the offices of county attorneys and district attorneys in this state, and especially none to the relators who have filed the petition in this case and who have shown their competency by the marked ability with which they have supported their cause in the arguments made before this court. But the county attorneys and district attorneys are local officers, elected by comparatively a small number of voters in a prescribed locality, and mainly with reference to the main function, which they are called upon to perform, namely, to prosecute the pleas of the state in criminal cases. Again we can not lose sight of the fact that the voters, especially in restricted localities, not infrequently are influenced by some improper motive—some sympathy for the candidate or some popular caprice which leads them to put incompetent men into office—a result by no means so probable in case of an important office like that of attorney-general, in whose election all the voters of the state have the right to participate.

What was said by us in the case of Harris County v. Stewart (91 Texas, 133) was manifestly influenced by the opinion in the case of the State v. Moore, and in any event is clearly distinguishable from the present case. The main purpose of section 21 of article 5 being manifestly to make it the duty of the county attorney or district attorney, as the case might be, to prosecute the pleas of the state, it may be gravely doubted whether it was within the power of the legislature to deprive them of that function, by conferring it in whole or in part upon another officer. Neither does the case of the State v. the International & Great Northern Railroad Company (89 Texas, 562) support the position. It is there merely ruled that the powers expressly conferred upon the attorney-general by section 22 of article 4 of the

constitution are exclusive and could not be devolved by the legislature upon the county attorney.

It follows from what we have said that we are of the opinion that the legislature had the power to create causes of action in favor of the state and to make it the exclusive duty to prosecute such suits.

Therefore the writs of mandamus prayed for are refused.