

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1032-20

### STATE OF TEXAS

### v.

### ZENA COLLINS STEPHENS, Appellee

### NO. PD-1033-20

### EX PARTE ZENA COLLINS STEPHENS

### ON APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### CHAMBERS COUNTY

**YEARY, J., filed a dissenting opinion.**

### <u>DISSENTING OPINION</u>

As the Court today readily acknowledges, in considering whether the Legislature has rendered an unconstitutional statute, we must first indulge every reasonable presumption that it has not. Majority Opinion at 9. An argument for upholding the constitutionality of the statute at issue in this case is readily available, based upon at least persuasive, if not binding, authority from the Texas Supreme Court. Because the Court

nevertheless concludes that the statute is unconstitutional, I respectfully dissent.

### THE SEPARATION OF POWERS ISSUE IN THIS CASE

The separation of powers provision of the Texas Constitution has remained essentially unchanged since 1845. The major change that occurred within the 1845 version was its "recognition that the doctrine of separation, however rigid in principle, was subject to exceptions 'expressly provided' in the constitution." George D. Braden, et al., 1 THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS, at 89 (1977). Article II, Section 1 of the Texas Constitution divides the government of the state into "three distinct departments": the "Legislative," the "Executive," and the "Judicial." TEX. CONST. art. II, § 1. It then explicitly declares that "no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, *except in the instances herein expressly permitted*." *Id*. (emphasis added).

The Texas Constitution establishes the offices of County and District Attorneys under the "Judicial" department of government, and it provides that those officers "shall represent the State in all cases in the District and inferior courts in their respective counties . . ." TEX. CONST. art. V, § 21. The Attorney General (hereinafter, "AG") is a "person" established within the "Executive" department. Notwithstanding this arrangement, Section 273.021(a) of the Election Code, which was first enacted in 1985, expressly provides that "[t]he Attorney General may prosecute a criminal offense prescribed by the election laws of this state." TEX. ELECTION CODE § 273.021(a).[1] Subsection (b) of this provision likewise

---

[1] As originally enacted in 1985, Section 273.021(a) permitted the AG to prosecute only those election law violations that occurred "in connection with an election covering territory in

authorizes the AG to appear before a grand jury in connection with prosecuting such offenses, and Subsection (c) provides that the AG's authority in these regards is not exclusive; that is to say, it "does not affect the authority derived from other law to prosecute the same offenses." *Id*, (b) & (c).

The question in this case, then, is whether the Constitution has elsewhere "expressly permitted" the AG to "exercise" a power more "properly attached" to local prosecuting authorities. Absent some "express" language in the Texas Constitution—beyond Article II, Section 1—that "permits" the Legislature to authorize the AG to exercise a power otherwise assigned to officers established within the Judicial department, it would seem that Section 273.021 of the Election Code might violate separation of powers.

But there *is* such express language. It appears in the very provision that pertains to the office of the AG, Article IV, Section 22 of the Texas Constitution. TEX. CONST. art. IV, § 22. Among the "duties" specifically set out in this provision is a catch-all: "and perform such other duties as may be required by law." *Id*.

It was long ago held, in *Brady v. Brooks*, that this catch-all provision authorizes the "Legislative" department to pass statutes authorizing even *exclusive* authority in the AG to initiate civil lawsuits on behalf of the State in certain kinds of cases, notwithstanding what would otherwise constitute an unconstitutional encroachment upon a "power" otherwise residing in the "Judicial" department. 99 Tex. 366, 89 S.W. 1052 (Tex. 1905). Then, in 2014, the Fifth Court of Appeals relied on the Texas Supreme Court's decision in *Brady* to

---

more than one county." Acts 1985, 69th Leg., ch. 211, § 1, p. 1054, eff. Jan. 1, 1986. This limitation was removed by a revision to Section 273.021(a) in 1993. Acts 1993, 73rd Leg., ch. 728, § 79, p. 2859, eff. Sept. 1, 1993.

resolve the very issue the Court addresses today in this case, holding that the statute does not violate separation of powers. *Medrano v. State*, 421 S.W.3d 869, 878–80 (Tex. App.—Dallas 2014, pet. ref'd). When I examine these cases, they persuade me that Section 273.021(a) does not violate the principle of separation of powers embodied in Article II, Section 1, of our state constitution.

## *BRADY*

When *Brady* was decided, in 1905, the relevant constitutional provisions—Article II, §1, and Article IV, § 22—read in all essential respects the same as they do today.[2] The AG brought civil suits in two cases pursuant to Legislative enactments that specifically and exclusively authorized him to do so in the type of suits involved. 99 Tex. at 373–74, 89 S.W. at 1053. In a mandamus action, it was argued that to implement that legislation would violate Article V, Section 21 of the Texas Constitution, which vests the authority to represent the State "in all cases in the district and inferior courts in their respective counties" with the local county attorney (or, in some circumstances, the district attorney). *Id*., 99 Tex. at 374, 89 S.W. at 1053 (quoting TEX. CONST. art. V, § 21). The Texas Supreme

---

[2] Article IV, Section 22, as it presently reads, is quoted in full by the Court. Majority Opinion at 7. For convenience's sake, I will reiterate it here:

> Sec. 22. The Attorney General shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party, and shall especially inquire into the charter rights of all private corporations, and from time to time, in the name of the State, take such action in the courts as may be proper and necessary to prevent any private corporations from exercising any power or demanding or collecting any species of taxes, tolls, freight or wharfage not authorized by law. He shall, whenever sufficient cause exists, seek a judicial forfeiture of such charters, unless otherwise expressly directed by law, and give legal advice in writing to the Governor and other executive officers, when requested by them, and perform such other duties as may be required by law.

TEX. CONST. art. IV, § 22.

Court denied mandamus relief.

In doing so, the Supreme Court explained in detail why it found no separation of powers problem with the legislative enactments. I quote liberally from the opinion in *Brady* to emphasize its relevance to the issue before us today:

> [W]e do not controvert the proposition . . . that if section 21 of article 5 should be construed as conferring upon county and district attorneys the exclusive power to represent the state in all cases except those in which the Attorney General is expressly authorized to act, then the Legislature would be prohibited from subtracting from or abridging the powers so conferred. But in our opinion that article does not necessarily control the section which defines the powers and duties of the Attorney General. The words, 'he shall perform such other duties as may be defined by law,' are as broad as those employed in section 21 of article 5; and if unrestricted would empower the Legislature to authorize him to make it his duty to represent the state in any case in any court. That section 21 of article 5 does place an important restriction upon that language we do not doubt; for example, in our opinion, the Legislature could not take away from county attorneys as much of their duties as practically to destroy their office.
>
> Now it is not unreasonable to presume that when the framers of the Constitution came to formulate the section which defines the duties of county and district attorneys, if the objection had been urged that the powers conferred were too broad and would deprive the state of having suits of the greatest importance prosecuted by its Attorney General, the reply would have been that the power expressly given to the Legislature to impose upon the Attorney General duties in addition to those expressly defined was sufficient to enable that body to provide that that officer should represent the state in any class of cases where his services should be deemed requisite. So as to voters who adopted the Constitution. If the same objection had been interposed by them to the Constitution was submitted for their ratification, namely, that section 21 of article 5 gave too much authority to the officers therein named, they would in all probability have been satisfied upon that matter, by having it pointed out to them, that section 22 of article 4 authorized the Legislature to restrict the powers given by section 21 [of article 5], by conferring them in part upon the Attorney General. * * * All provisions of the Constitution in relation to the same subject-matter must be construed together. We attach no importance to the fact that the definition of the duties and powers of the Attorney General are placed in article 4, which is the article devoted to the executive department of the state government. The duties imposed upon him are both executive and judicial, that is, they are judicial in the sense, that he is to represent the state in some cases brought in the

courts. The very name imports, even in ordinary language, that he is the chief law officer of the state and is that in use in all common-law statutes to designate such officer. So article 5, the judiciary article, embraces the definition of duties of the sheriffs and clerks of the courts whose powers and duties are executive. Section 22 of article 4 might appropriately have been placed in article 5, and we think it should be construed precisely as if it had been so placed.

* * *

To discover what was intended by section 21 of article 5, construed in light of section 22 of article 4, we must look to the reason of the provisions deductible from the interests of the state which were sought to be guarded, and that construction ought to be adopted which will best safeguard the varied and important rights to be affected. * * * Again, we cannot lose sight of the fact that the voters, especially in restricted localities, not infrequently are influenced by some improper motive, some sympathy for the candidate or some popular caprice which leads them to put incompetent men into office, a result by no means so probable in case of an important office like that of Attorney General in whose election all the voters of the state have the right to participate.

*Id*. 99 Tex. at 377–79, 89 S.W. at 1055–57.

I take this language in *Brady* to be an unequivocal acceptance of the proposition that the catch-all clause in Article IV, Section 22—"and perform such other duties as may be required by law"—satisfies the exception clause in Article II, Section 1. In other words, the Legislative department is constitutionally authorized, by the "other duties as required by law" language in that Article, to grant some responsibility to the AG for conducting litigation in the trial courts on the State's behalf, notwithstanding Article V, Section 21, at least so long as the grant does not invade the local county or district attorney's authority so pervasively "as practically to destroy their office."[3]

---

[3] In describing *Brady*'s holding in *Meshell v. State*, 739 S.W.2d 246, 254 (Tex. Crim. App. 1987), this Court explained that "[t]his apparent encroachment upon the power of the district and county attorneys was permissible because an express provision of the Texas Constitution provides

The Court seeks to distinguish *Brady* on the ground that it is a civil case, and because the AG was empowered to prosecute those civil cases by the specific authorizing language in Article IV, Section 22, since it involved recovering delinquent taxes from corporations. Majority Opinion at 14. This is a revisionist reading of the Supreme Court's *Brady* opinion. From the extensive quote excerpted above, and from what seems to me to be an objective reading of that opinion as a whole, it is clear that *Brady*'s rationale was based upon an analysis of the catch-all "other duties" clause in Article IV, Section 22, and decidedly *not* upon the corporations-related authority it specifically confers. The Court thus construes *Brady* according to what it thinks the opinion *could* have decided rather than what it, in fact, did decide.[4]

The Court concludes: "Simply put, the 'other duties' clause may not transform the judicial duty of prosecutorial power into an executive duty." Majority Opinion at 16. But as a categorical statement, I believe this conclusion to be mistaken. *Brady* stands for the proposition that the "other duties" clause in Article IV, Section 22, may indeed authorize the Legislative department to consign a limited authority upon the AG that might ordinarily be regarded as the bailiwick of the Judicial department, so long as that authority is not extravagantly invasive. According to my reading of *Brady*, nothing about this separation-of-powers principle is limited to the realm of civil cases.

*Brady* and *Medrano* are the closest authorities on point. The Court nevertheless

---

that the Attorney General shall 'perform such other duties as may be required by law.' Tex. Const., Art. IV, § 22; see *Brady*, supra, 89 S.W. at 1055–56."

[4] That the Supreme Court *could* have ruled the same way in *Brady* on the rationale that the AG was authorized to prosecute them under the specific authority that Article IV, Section 22, confers, rather than under the catch-all "other duties" provision, does not strike me as a foregone conclusion.

declares that *Brady* is "distinguishable." Majority Opinion at 14 & 16. But what the Court seems to really mean by that is that *Brady* was wrong *on the law*: (1) It used the wrong standard. *Id*. at 15. (2) And it "erroneously held that the 'other duties' clause somehow authorized the Legislature to extend the constitutionally granted duties of the judicial branch to the AG in the executive branch." *Id*. at 16. But it concerns me that the Court would so readily declare that our sister court has applied the wrong legal standard or that its construction of the same provision of our Texas Constitution is plainly "erroneous." At the very least, the Court should first try to harmonize its understanding with that Court's. The *Brady* construction of Article IV, Section 22, counsels in favor of recognizing the AG's authority to prosecute election law violations, just as the Fifth Court believed it did in *Medrano*. The Court should adhere to it.

## *MEDRANO*

The Fifth Court of Appeals' 2014 opinion in *Medrano* relied heavily upon *Brady* to explain why it did not violate Article II, Section 1, for the Legislature to give litigation authority to the AG to "prosecute a criminal offense prescribed by the election laws of this state" pursuant to Section 273.021(a) of the Election Code—the very issue before this Court today. Along the way, the Fifth Court observed:

> Our courts have long recognized the legislature may have sound reasons for having a statewide agency pursue some claims in place of the district or county attorney. *See Brady*, 89 S.W. at 1056. Generally speaking, as the State argues here, this statute allows the AG to "step in" when election violation cases may be "politically sensitive" at the local level, which could discourage local prosecutors from acting. We conclude the [L]egislature's enactment of [the statute] does not delegate a power to one branch that is more properly attached to another nor does it allow one branch to unduly interfere with another.

*Medrano*, 421 S.W.3d at 880. Citing *Brady* for the proposition that the Legislature was

authorized to empower the AG to prosecute cases in the trial court under the catch-all clause of Article IV, Section 22, the Fifth Court concluded that Section 273.021(a) of the Election Code "does not violate the separation of powers doctrine[.]" *Id*. at 878–80. Eight years ago, this Court refused discretionary review of *Medrano*,[5] and the court of appeals in this case cited it as a primary authority for its holding. *State v. Stephens*, 608 S.W.3d 245, 255 (Tex. App.—Houston [1st. Dist.] 2020). Nevertheless, today the Court holds, contrary to both *Brady* and *Medrano*, that Section 273.021(a) *does* violate the separation of powers provision in our Texas Constitution.

### *EJUSDEM GENERIS*

The court of appeals in this case, in addition to relying on *Medrano*, incorporated an analysis of Article IV, Section 22, that involved the canon of construction known as *ejusdem generis*, which literally means "of the same kind." *Shipp v. State*, 331 S.W.3d 433, 437 (Tex. Crim. App. 2011) (plurality opinion). This doctrine provides that, "[w]here general words follow specific words in an enumeration describing a statute's legal subject, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." Norman J. Singer & Shambie Singer, 2A SUTHERLAND STATUTORY CONSTRUCTION § 47:17 at 364–68 (7th ed. rev. 2014). The court of appeals believed that the catch-all phrase in Article IV, Section 22 ("and perform such other duties as may be required by law") was "in keeping with" the specific delegations of

---

[5] The Court points out that *Medrano* failed to fashion a sufficiently detailed argument in his petition for discretionary review, permitting this Court to summarily refuse his petition. Majority Opinion at 16 n.4. But this Court is also authorized to grant discretionary review "on its own initiative[,]" which it could well have done had the Court thought at that time that the Fifth Court of Appeals had mishandled this important issue. TEX. R. APP. P. 66.1, 67.1.

constitutional power to the AG, "which allows the Attorney General to represent the State [in the Supreme Court of the State], to advise the State, and to act on behalf of the State against corporations." *Stephens*, 608 S.W.3d at 255. The court of appeals reasoned: "Corporations, like elections and elected offices, are wholly creatures of state action. It follows that the Attorney General has authority to prosecute election law violations." *Id*.

The Court today understandably takes issue with this (to me, at least, confusing) application of *ejusdem generis*, characterizing it as a "misapplication." Majority Opinion at 12. The Court observes: "Representing the state in a criminal prosecution for election law violations is not of the same character as representing the state in suits to prevent corporations from exercising authority not authorized by law." *Id*. I do not disagree with this observation. But in fact, it seems to me a mistake to suppose that *ejusdem generis* should have any application *at all* in construing Article IV, Section 22.

The list of duties enumerated in Article IV, Section 22, do not exemplify specific examples of the same sorts of duty to begin with, so there is nothing about them to inform how broadly or narrowly to construe the "other duties" catch-all phrase that follows them. Instead, those enumerated duties are quite variable: (1) represent the State in all civil suits at the level of the Supreme Court; (2) take "proper and necessary" "action in the courts" to regulate corporate behavior; and (3) provide legal advice to other executive branch officers as requested. Though specific, these duties share no particular characteristics that rationally serve to inform whether the "other duties as may be required by law" must necessarily be limited to duties ordinarily thought to be exclusive to the Executive department.[6]

---

[6] As Justice Scalia and Professor Garner have observed: "When the initial terms all belong to an obvious and readily identifiable genus, one presumes the speaker or writer has that category

Indeed, two of these duties have even been characterized as at least quasi-judicial: (1) representing the State in all appellate matters before the Supreme Court, and (2) taking appropriate "action in the courts" (presumably even trial-level courts) to curb unlawful corporate activity. This is exactly what the *Brady* opinion was talking about when it described the duties of the AG as hybrid in nature.[7] *See Brady*, 99 Tex. at 378, 89 S.W. at 1056 ("The duties imposed upon him are both executive and judicial, that is, they are judicial in the sense, that he is to represent the state in some cases brought in the courts."). In my view, *ejusdem generis* is of no use at all in this inquiry, and it only seems to lead the Court to a conclusion that is at odds with *Brady*.[8]

That the Texas Constitution also permits legislative assignment of "other duties" to governmental entities other than the AG, such as the Texas Water Development Board,

---

in mind for the entire passage." Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS at 199 (2012).

[7] Personally, I am inclined more toward the view that the duties of county and district attorneys are quasi-executive than that the duties of the AG are quasi-judicial. As spelled out in Article V, Section 21 of the Texas Constitution, local prosecutors "shall represent the State in all cases in the District and inferior courts in their respective counties[.]" TEX. CONST. art. V, § 21. I regard representing the interests of the State in judicial proceedings to be more of an executive function than a judicial one. Be that as it may, the bottom line here, as *Brady* establishes, is that there is an inherent degree of crossover between the duties of what are technically judicial-department functionaries (county and district attorneys) and the duties that are spelled out for the executive-department AG.

[8] In any event, since Section 273.021(a) was enacted in 1985, another provision in the Texas Constitution has been amended that would have provided authority for the Legislature to do so—without the impediment of a faulty *ejusdem generis* analysis. In November of 1999, the electorate of Texas adopted an amendment to Article IV, Section *23*, so that it now applies to the AG as well as other state-wide elected officers. Without enumerating any other duties, this constitutional provision also now provides that such officers, including the AG, "shall . . . perform such duties as are or may be required by law." Acts 1999, 76th Leg., H.J.R. 62, § 27, p. 6632, adopted Nov. 2, 1999. Presumably the Legislature could currently pass the equivalent of Section 273.021(a) of the Election Code on authority of *this* constitutional provision without violating separation of powers, even if it arguably could not have in 1985.

does not render the holding of *Brady* absurd. Majority Opinion at 12–13. In the first place, even the Court recognizes the "extreme" nature of its hypothetical. *Id*. at 13. In any event, even if the Legislature did deem it appropriate to permit lawyers from the Texas Water Development Board to prosecute criminal offenses that involve its particular area of expertise, the Court has not shown that its participation in those prosecutions would "destroy" the offices of local prosecutors.

## THE AG IS NOT "REQUIRED" TO PROSECUTE

Article IV, Section 22, permits the Legislature to prescribe "other duties as may be required by law." TEX. CONST. art. IV, § 22. It is true that Section 273.021(a) does not "require" the AG to prosecute criminal offenses prescribed by the election laws. Majority Opinion at 16–17. Rather, it *permits* him to, at his discretion, as circumstances warrant. This should not give us pause. Section 273.021(a) manifestly "requires" the AG to *exercise* that discretion to decide *whether* to prosecute election law violations, as appropriate. I believe that this constitutes enough of a "require[ment]" to avoid any conflict with Article II, Section 1's prohibition of one governmental department unduly encroaching upon the prerogative of another. And the fact that the AG may ultimately choose not to exercise his discretion in this regard actually contributes to the conclusion that the limited Legislative grant of discretion embodied in Section 273.021(a) does not "destroy" the office of the local prosecuting authority. *Brady*, 99 Tex. at 378, 89 S.W. at 1056.

## *SALDANO*

Speaking of Article V, Section 21 and Article IV, Section 22, this Court in *Saldano v. State*, 70 S.W.3d 873, 880 (Tex. Crim. App. 2002), unanimously observed:

The [Texas] Constitution gives county attorneys and district attorneys

authority to represent the State in criminal cases. It authorizes the [L]egislature to give the attorney general duties which, presumably, could include criminal prosecution.

The Court today characterizes this statement as dicta. Majority Opinion at 17. But it is dicta that is consistent with the Texas Supreme Court's holding in *Brady*. Still, the Court insists, we went on in *Saldano* to recognize that the AG categorically "has no criminal prosecution authority." Majority Opinion at 18 (citing *Saldano*, 70 S.W.3d at 880, which in turn cites to the plurality opinion in *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 930 (Tex. Crim. App. 1994)). The Court also contends that any ability that the AG may have to become involved in criminal litigation "is limited to assisting the district or county attorney *upon request*." Majority opinion at 18 (citing *Saldano*, 70 S.W.3d at 880, which in turn cites TEX. GOV'T CODE § 402.028). But the Court today is mistaken to rely on *Saldano* for these propositions, because *Saldano* (albeit unanimously decided) was demonstrably mistaken in two important respects.

First, *Saldano* was simply incorrect as a matter of fact to assert that the AG had no criminal prosecutorial authority—if for no other reason than that Section 273.021(a) of the Election Code, itself, had been enacted in 1985, some seventeen years before *Saldano* was decided. Only by presuming that Section 273.021(a) could not provide any legitimate authority to the AG to prosecute a criminal case could the Court have properly claimed, as *Saldano* did, that the AG had absolutely *no* criminal prosecutorial authority. And that, of course, would beg the question entirely.

Second, the Court also observed in *Saldano* that "[t]he authority of the attorney general is limited to assisting the district or county attorney, upon request." 70 S.W.3d at 880. For this proposition, the Court cited only Section 402.028 of the Texas Government

Code. *Id*. at 880 n.30 (quoting TEX. GOV'T CODE § 402.028). It is true that this provision of the Government Code explicitly says that, upon "request[,]" the AG "may provide assistance" to local prosecutors "in the prosecution of all manner of criminal cases[.]" TEX. GOV'T CODE § 402.028(a).[9] But to conclude from this provision that the AG may *only* prosecute criminal cases upon request is faulty logic.

Even the legislative provision that the AG *may* participate "in all manner of criminal cases," albeit only at the invitation of the district or county attorney, is dependent on some constitutional authorization.[10] The "other duties" provision is the only thing that seems to be available to justify such legislative action. In any event, the existence of § 402.028(a)

---

[9] This provision reads:

> At the request of a district attorney, criminal district attorney, or county attorney, the attorney general may provide assistance in the prosecution of all manner of criminal cases, including participation by an assistant attorney general as an assistant prosecutor when so appointed by the district attorney, criminal district attorney, or county attorney.

TEX. GOV'T CODE § 402.028(a). Subsection (b) of this statute permits (but does not require) the local prosecutor to "appoint and deputize an assistant attorney general as assistant prosecutor" to provide such prosecutorial assistance. TEX. GOV'T CODE § 402.028(a).

[10] Art. II, § 1, explicitly provides that provides that "no person . . . being of one of these departments . . . shall exercise any power attached to . . . others, *except as herein expressly permitted*." TEX. CONST. art. II, § 1 (emphasis added). The Court does not identify where the Constitution "expressly permit[s]" the exercise of a power of the judicial department by a member of the executive department so long as an officer within the judicial department invites him to do so. Does the Court mean to suggest that, upon invitation by a judicial department official, an executive department official sheds his or her membership in the executive department and reappears within the judicial department? I cannot agree. The only reason the Legislature is authorized to provide for the AG to participate in criminal prosecutions upon invitation by a county or district attorney is the fact that the Constitution provides that the AG may exercise "other duties as may be required by law." TEX. CONST. art. IV, § 22. *Cf. Board of Water Engineers v. McKnight*, 111 Tex. 82, 92, 229 S.W. 301, 304 (1921) ("The Constitution, in its prohibition against conferring on persons in one governmental department power belonging to another, contains no exception of instances wherein the latter department may review the acts of the former. The Constitution making no such exception, the courts should not make it.").

does not mean that the Legislature itself may not *also* provide that, with respect to *particular* types of criminal cases, the AG may participate whether he is invited to or *not*. That the Legislature has generally authorized the AG to participate in criminal prosecutions, but only upon request, does not preclude it from otherwise explicitly authorizing more direct and specific AG exercises of prosecutorial power.

Indeed, the Court today makes the same mistake of logic in its reliance upon the plurality opinion of this Court in *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921 (Tex. Crim. App. 1994). Majority Opinion at 20. *Hill* held that it did not violate separation of powers for the AG to participate in criminal prosecutions at the request of the district attorney. But, as is true of Section 402.028 of the Government Code, *Hill* does not say that the AG can *only* prosecute by invitation of the local prosecutor. That the AG is always *permitted* to prosecute under these circumstances does not mean that he is categorically *prohibited* from prosecuting in their *absence*. Once again, it begs the question entirely to declare that Section 273.021(a) must be unconstitutional under this lapse in logic.

## COUNT I: THE TAMPERING PROSECUTION

Because I disagree that Section 273.021(a) of the Election Code is unconstitutional, I must address the State's second and third grounds for review: whether the court of appeals erred to reverse the trial court's decision to quash the tampering allegation in Count I of the indictment. Majority Opinion at 5. I would hold that the court of appeals correctly reversed the trial court's ruling in this regard, and I would affirm its judgment in full.

Section 273.021(a) permits the AG to "prosecute a criminal offense prescribed by the election laws of this state." TEX. ELECTION CODE § 273.021(a). It does not require the consent, permission, or request of the local prosecuting authority. Nor does it seem on its

face necessarily to limit the AG's authority to the prosecution of offenses "prescribed by the election laws" in the Election Code itself.

Moreover, Section 37.01(2)(E) of the Texas Penal Code defines "governmental record" to include "an official ballot or other election record[.]" TEX. PENAL CODE § 37.01(2)(E). A person who "tampers" with such a governmental record violates Section 37.10 of the Penal Code. TEX. PENAL CODE § 37.10. It would certainly seem that tampering with "an official ballot or other election record" is "a criminal offense prescribed by the election laws of this state" in contemplation of Section 273.021(a) of the Election Code. The AG should therefore be able to prosecute such an offense with or without the local prosecutor's permission.

Section 402.028 of the Government Code, on its face, would also seem to permit the AG to participate in the prosecution of such a tampering case, in any event, at the request of the local prosecutor.[11] However, there is a provision in the tampering statute itself that might yet be read to prohibit the AG from assisting the local prosecutor in all but one category of tampering offense. Section 37.10(i) expressly provides for the AG's assistance—in fact, "concurring jurisdiction"—to prosecute a tampering offense "that involves the state Medicaid program." TEX. PENAL CODE § 37.10(i).[12] It might be argued

---

[11] *See* note 9, *ante*.

[12] This provision reads:

> With the consent of the appropriate local county or district attorney, the attorney general has concurrent jurisdiction with the consenting local prosecutor to prosecute an offense under this section that involves the state Medicaid program.

TEX. PENAL CODE § 37.10(i).

that, by providing explicitly for those types of tampering offenses that the AG *may* participate in, with the local prosecutor's consent, Section 37.10 has, by necessary negative implication, has excluded the AG from consensual participation in *any other* type of tampering prosecution—*expressio unius est exclusio alterius*.[13] This would make Section 37.10(i) of the Penal Code the more specific provision, which should control over the more general, but conflicting, provision of Section 402.028(a) of the Government Code, according to the Code Construction Act.[14]

But this argument cannot prevail to make Section 273.021(a) of the Election Code inapplicable to the prosecution of a tampering case that involves "an official ballot or other election record." This is so for two reasons. First, Section 273.021(a) is not a provision about *consensual* participation by the AG; instead, it permits the AG to prosecute whether or not the local prosecutor requests it or consents to it. Second, to the extent that the AG's participation is limited to the violation of "election laws," the canon of *expressio unius est exclusio alterius* simply does not apply. The reason is that Section 273.021(a) constitutes another *specific* statute—not a general statute like Section 402.028(a) of the Government Code. Penal Code Section 37.10(i) cannot be invoked to preclude the operation, by

---

[13] *See* Norman J. Singer & Shambie Singer, 2A SUTHERLAND STATUTORY CONSTRUCTION § 47:23 at 406–13 (7th ed. rev. 2014) ("*Expressio unius* instructs that, where a statute designates a form of conduct, the manner of its performance and operation, and the persons and things to which it refers, courts should infer that all omissions were intentional exclusions.") (footnotes omitted). Justice Scalia and Professor Garner have called it the "negative-implication canon." Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS at 107 (2012).

[14] *See* TEX. GOV'T CODE § 311.026(b) ("If the conflict between the general provision and the special . . . provision is irreconcilable, the special . . . provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.").

necessary implication, of another *specific* statute.

In any event, the Court should endeavor to harmonize statutes whenever they seem on the surface to conflict.[15] Here, assuming that they even require it, I would harmonize the two provisions—Section 37.10 of the Penal Code and Section 273.021(a) of the Election Code—by concluding that each governs a discretely specific scenario: The AG may, whenever he has the consent of the local prosecutor, prosecute tampering cases that involve Medicaid, under Section 37.10(i); and he also may always prosecute tampering cases, at his own discretion, whenever they involve "an official ballot or other election record[,]" under Section 273.021(a). Whether the AG ultimately may also prosecute *other* types of tampering offenses, at least with the local prosecutor's consent, I would not resolve today.

## CONCLUSION

In summation, I would conclude that Section 273.021(a) of the Election Code does not violate separation of powers, and that it is therefore constitutional. Having so decided, I would also conclude that the court of appeals correctly held that the AG may exercise its discretion under that provision to prosecute Stephens under its theory of tampering with a governmental record (that is, tampering with "an official ballot or other election record"). Accordingly, I would affirm the judgment of the court of appeals in whole. Because the Court does not, I respectfully dissent.

FILED:                December 15, 2021
PUBLISH

---

[15] *See* TEX. GOV'T CODE § 311.026(a) ("If a general provision conflicts with a special . . . provision, the provisions shall be construed, if possible, so that effect is given to both.").