ACCEPTED
15-25-00116-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/8/2025 7:00 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00116-CV

# In the Court of Appeals
# for the Fifteenth Judicial District
# Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
9/8/2025 7:00:32 PM
CHRISTOPHER A. PRINE
Clerk

KEN PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY
GENERAL FOR THE STATE OF TEXAS AND THE OFFICE OF THE
ATTORNEY GENERAL FOR THE STATE OF TEXAS,

*Appellants*,

*v.*

DELIA GARZA, IN HER OFFICIAL CAPACITY AS TRAVIS COUNTY
ATTORNEY, ET AL.; JOHN CREUZOT, IN HIS OFFICIAL CAPACITY AS
DALLAS COUNTY CRIMINAL DISTRICT ATTORNEY, ET AL.; AND BRIAN
MIDDLETON, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY OF
FORT BEND COUNTY (268TH JUDICIAL DISTRICT), ET AL.,

*Appellees.*

On Appeal from the
459th Judicial District Court, Travis County

## REPLY BRIEF FOR APPELLANTS

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

WILLIAM R. PETERSON
Solicitor General

WILLIAM F. COLE
Principal Deputy Solicitor General
State Bar No. 24124187
William.Cole@oag.texas.gov

BENJAMIN WALLACE MENDELSON
Assistant Solicitor General

*Counsel for Appellants*

**ORAL ARGUMENT REQUESTED**

# Table of Contents

Page

Index of Authorities ..................................................................................ii

Introduction...........................................................................................1

Argument..............................................................................................2

   I.   The Prosecutors Lack a Probable Right to Relief.......................................2

      A.   The reporting statute permits the Attorney General to adopt rules. ....2

      B.   The Rules do not exceed the scope of the reporting statute.................9

      C.   The Rules do not violate the APA. .....................................................14

      D.   The Rules do not violate the Separation of Powers Clause. ...............16

   II.   The Equities Favor the Attorney General. .................................................21

      A.   The Attorney General did not waive the issue of irreparable harm. ...22

      B.   The harm to the Attorney General outweighs any harm to the prosecutors. ...................................................................................23

      C.   The temporary injunction disrupts the status quo. ...........................27

   III.  The Trial Court's Order Is Impermissibly Overbroad. ...........................27

Prayer .................................................................................................28

Certificate of Compliance .......................................................................29

# Index of Authorities

Page(s)

**Cases:**

*Abbott v. Harris County*,
672 S.W.3d 1 (Tex. 2023)............................................................................ 21, 27

*Abbott v. Mex. Am. Legis. Caucus, Tex. House of Representatives*,
647 S.W.3d 681 (Tex. 2022)...............................................................................24

*Brady v. Brooks*,
89 S.W. 1052 (Tex. 1905).................................................................................18

*Brooks v. Northglen Ass'n*,
141 S.W.3d 158 (Tex. 2004).................................................................................6

*Butnaru v. Ford Motor Co.*,
84 S.W.3d 198 (Tex. 2002) ................................................................................21

*In re CenterPoint Energy Hous. Elec., LLC*,
629 S.W.3d 149 (Tex. 2021).................................................................................6

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024)...........................................................................................28

*EBS Sols., Inc. v. Hegar*,
601 S.W.3d 744 (Tex. 2020) ................................................................................3

*Farm & Ranch Freedom All. v. Tex. Dep't of Agric.*,
No. 03-23-00459-CV, 2025 WL 994190 (Tex. App.—Austin Apr. 3,
2025, no pet.) ....................................................................................................15

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)...........................................................................................20

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000)..............................................................................................9

*Li v. Pemberton Park Cmty. Ass'n*,
631 S.W.3d 701 (Tex. 2021) ..............................................................................22

*Malouf v. State ex rel. Ellis*,
694 S.W.3d 712 (Tex. 2024)...............................................................................10

*Methodist Hosps. of Dall. v. Tex. Indus. Accident Bd.*,
798 S.W.2d 651 (Tex. App.—Austin 1990, writ dism'd w.o.j.) ........................16

*Mock v. Garland*,
75 F.4th 563 (5th Cir. 2023) ..............................................................................12

*State ex rel. Off. of Att'y Gen. of Tex. v. City of San Marcos*,
714 S.W.3d 224 (Tex. App.—15th Dist. 2025, pet. filed) .......................... 26, 27

*PUC v. City Pub. Serv. Bd. of San Antonio*,
53 S.W.3d 310 (Tex. 2001) ....................................................... 4, 11

*Pulsifer v. United States*,
601 U.S. 124 (2024) ..................................................................6

*R.R. Comm'n v. Lone Star Gas Co.*,
844 S.W.2d 679 (Tex. 1992).........................................................4

*Rattray v. City of Brownsville*,
662 S.W.3d 860 (Tex. 2023) .......................................................20

*S.C. v. M.B.*,
650 S.W.3d 428 (Tex. 2022) ................................................... 2, 3, 9

*Shrader v. Ritchey*,
158 Tex. 154 (Tex. 1958) .........................................................18

*State v. Hollins*,
620 S.W.3d 400 (Tex. 2020).......................................................25

*State v. Stephens*,
663 S.W.3d 45 (Tex. Crim. App. 2021) ....................................... 10, 18

*In re State*,
711 S.W.3d 641 (Tex. 2024) ..............................................21, 23, 27

*Sturgeon v. Frost*,
587 U.S. 28 (2019) ...............................................................10

*TEA v. Hous. ISD*,
660 S.W.3d 108 (Tex. 2023) .......................................................23

*In re Tex. House of Representatives*,
702 S.W.3d 330 (Tex. 2024) .................................................18, 19, 20

*Tex. Workers Comp. Comm'n v. Patient Advocs. of Tex.*,
136 S.W.3d 643 (Tex. 2004)........................................................14

*TGS-NOPEC Geophysical Co. v. Combs*,
340 S.W.3d 432 (Tex. 2011).......................................................10

*Trump v. CASA, Inc.*,
145 S. Ct. 2540 (2025)............................................................27

*Webster v. Comm'n for Law. Discipline*,
704 S.W.3d 478 (Tex. 2024) .................................................. 17, 26

**Statutes and Rules:**

5 U.S.C. § 706(2) ........................................................................... 27

Tex. Civ. Prac. & Rem Code:

   § 66.002 ................................................................................. 12

Tex. Code Crim. Proc.:

   tit. 1, ch. 2, art. 29 (1879) ............................................... 7, 8

   tit. 1, ch. 2, art. 30 (1879) ............................................... 7, 8

   tit. 1, ch. 2, art. 40 (1879) .............................................. 7, 8

Tex. Gov't Code:

   § 41.006 ......................................................................... *passim*

   § 301.028(a) ........................................................................ 19

   § 301.028(b) ........................................................................ 19

   § 402.102(b) .................................................................. 13, 14

   § 552.008(b) ....................................................................... 19

   § 2001.024 .......................................................................... 16

   § 2001.024(a)(4)(C) ........................................................... 16

   § 2001.024(a)(5)(B) ........................................................... 16

   § 2001.033(a)(1) ................................................................. 14

   § 2001.0033(a)(1)(a) .......................................................... 14

   § 2001.035(d) ..................................................................... 14

   § 2001.042 .......................................................................... 13

Tex. Loc. Gov't Code:

   § 87.011 .............................................................................. 12

Tex. Rev. Civ. Stat.:

   tit. 15, art. 333 (1925) .......................................................... 8

   tit. 70, ch. 4, art. 4413 (1925) ............................................. 8

1 Tex. Admin. Code:

   §§ 56.1-.5 .............................................................................. 6

   §§ 56.1-.10 ............................................................................. 1

   §§ 56.3-.5 ....................................................................... 10, 17

   § 56.3(a)(4)-(6) ................................................................... 24

   § 56.8 .................................................................................. 11

   § 56.8(1) .............................................................................. 12

   § 56.8(1)-(2) .................................................................. 11, 12

   § 56.8(2) .............................................................................. 12

   § 59.6(c) .............................................................................. 13

49 Tex. Reg. 7140 ............................................................................ 16

50 Tex. Reg.:

    2173 ..................................................................................... 10, 14

    2174 ......................................................................................... 10

    2177 ......................................................................................... 15

    2176 ......................................................................................... 15

Tex. R. App. P. 38.1(f) ....................................................................22

**Other Authorities:**

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation
    of Legal Texts (2012) ............................................................... 6, 10

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933 (2018)......26

Order, *In re Abbott*, No. 21-0720 (Tex. Aug. 26, 2021) .........................................27

# INTRODUCTION

For almost one hundred and fifty years, the Legislature has authorized the Attorney General to obtain reports from county and district attorneys "relating to criminal matters and the interests of the state." Tex. Gov't Code § 41.006. Because this reporting statute also gives the Attorney General broad discretion to "direct[]" the "time[]" and "form" of those reports, *id.*, earlier this year he promulgated rules setting out prosecutors' obligations under this statute, 1 Tex. Admin. Code §§ 56.1-.10. Those Rules are well within the bounds of the Attorney General's statutory authority, and they comply with the Administrative Procedure Act and the Separation of Powers Clause, so the trial court erred by temporarily enjoining their enforcement.

To justify that temporary injunction, the prosecutor-Appellees sharply distort the Rules. Rather than guidelines that dictate the timing and content of required reports, the prosecutors claim that the Rules allow the Attorney General to assume the powers of prosecutors and superintend their every move, from charging decisions to plea bargains. But not a word of the Rules supports this imagined theory. Similarly meritless is the prosecutors' repeated refrain that compliance with the Rules would be onerous and financially ruinous, as it is belied by the facts *they* adduced at the temporary-injunction hearing establishing that compliance could be achieved with hiring a handful of extra employees. Moreover, since this litigation has been pending, every single entity covered by the Rules that is not a plaintiff in this case has submitted their initial report, and the Attorney General granted an extension to the only entity that asked for one. The Court should reverse the temporary injunction.

# ARGUMENT

## I. The Prosecutors Lack a Probable Right to Relief.

### A. The reporting statute permits the Attorney General to adopt rules.

As the Attorney General has explained (at 10-15), the reporting statute supplies him with express—and at minimum implied—authority to adopt rules to carry out his statutory charge. The statute obligates prosecutors to "report to the attorney general the *information* from their districts and counties *that the attorney general desires*" and "[a]t the *times* and in the *form that the attorney general directs*." Tex. Gov't Code § 41.006. That language vests discretionary authority in the Attorney General to adopt rules that identify the type of information that prosecutors must supply (via the term "desires") and the time and manner in which he will receive it (via the term "directs"). The prosecutors resist this conclusion in several ways, but none has merit.

1. The prosecutors first contend that the reporting statute does not supply the Attorney General with express authority to adopt rules because "[i]t does not say that the Attorney General may or shall adopt a 'rule' or 'rules' or 'regulations.'" Appellees.Br.33. But this argument seeks to improperly impose a "magic words" requirement, *S.C. v. M.B.*, 650 S.W.3d 428, 444 (Tex. 2022), which the prosecutors concede is not required "for statutory interpretation generally" so long as the "context . . . 'plainly' indicate[s] that the statute does what a party urges." Appellees.Br.36. Here, it is not just the "context" that demonstrates the Attorney General can adopt rules but express textual clues, including the verb "direct." *See* Appellants.Br.10.

2

The prosecutors nevertheless point to nearly two dozen statutes empowering the Attorney General to adopt rules or regulations that use their preferred linguistic convention. Appellees.Br.33-34; Middleton.Br.16-19. But the mere fact that this terminology has become common over the last three decades does not prove that it is the *only* language that confers rulemaking authority. The prosecutors respond (at 34) that their preferred language must "be presumed to have been excluded [from the reporting statute] for a purpose." Not so: it is hardly surprising the prosecutors' statutes—all of which were enacted during the last thirty-five years—use different language than the reporting statute, which was first enacted in 1879. There is no reason to think that the Legislature that enacted this statute almost 150 years ago would have deployed language that looks like linguistic conventions that prevail today.

The prosecutors also resist (at 34-35) the Attorney General's argument that the statute's authorization for him to "direct" the "'time' and . . . 'form'" of the prosecutors' reports provides the textual warrant for rulemaking. The prosecutors say (at 34) that "[w]hile the word 'direct' may suggest some type of authority, it has several meanings," including "to manage or guide by advice, helpful information, [or] instruction." Yet the "context of the statute," *EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 758 (Tex. 2020), shows that use of the word "directs" takes on a mandatory, not precatory, meaning, *see* Appellants.Br.10 (collecting mandatory definitions of "directs"). After all, the statute uses the mandatory phrase "shall report" to describe the prosecutor's obligations. Tex. Gov't Code § 41.006; *see S.C.*, 650 S.W.3d at 443 (explaining that the word "shall" is mandatory). And nothing about

3

the prefatory phrase "[a]t the times and in the form that the attorney general directs" indicates that the Attorney General's directions to the prosecutors are optional.

Finally, the prosecutors suggest (at 35) that even if the word "direct" is mandatory, it modifies only the terms "times" and "forms" and "cannot be read as a freestanding grant of power to regulate district and county attorneys." That argument ignores the mandatory nature of the rest of the statutory language: Surely the phrase "shall report . . . the information . . . the attorney general desires," Tex. Gov't Code § 41.006, authorizes the Attorney General to communicate the *substance* of the information he "desires" to obtain, along with the times and the form of its production.

**2.** Even if the reporting statute does not expressly confer rulemaking authority on the Attorney General, it does so impliedly. *See* Appellants.Br.11. The Supreme Court has held that "when the Legislature expressly confers a power on an agency, it also impliedly intends that the agency have whatever powers are reasonably necessary to fulfill its express functions and duties." *PUC v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 316 (Tex. 2001). Stated another way, "[a]n agency's authority to promulgate rules and regulations may be expressly conferred on it by statute or implied from other powers and duties given or imposed by statute." *R.R. Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992) (quotation omitted). That is precisely the case here: the Legislature *expressly* gave the Attorney General the power

4

to gather information from prosecutors and direct when and how they should provide it; that grant necessarily *implies* rulemaking authority to accomplish that task. *See* Appellants.Br.13.

The prosecutors do not dispute these principles, but instead repeatedly argue (at 40) that the reporting statute "does not expressly grant any duty to the Attorney General" and lacks any "express grant of regulatory authority," so it cannot confer any implied rulemaking authority on him. But the reporting statute plainly confers information-gathering powers on the Attorney General by mandating that prosecutors "shall report" to him "information" that he "desires relating to criminal matters and the interests of the state" "[a]t the times and in the form that" he "directs." Tex. Gov't Code § 41.006. It is hard to see how this statute could be anything other than an express grant of authority to the Attorney General to regulate the receipt of information from prosecutors and a conferral of discretion as to how and what to obtain. The prosecutors tepidly suggest (at 41) that the provision only "govern[s] prosecuting attorneys and describe[es] *their* powers and duties (not those of the Attorney General or any executive agency)." But the language of the statute demonstrates that it governs both—speaking to the prosecutors' duties *and* the Attorney General's concomitant powers.

The prosecutors also briefly suggest (at 40) that even if the Attorney General had express authority, the Rules are an improper exercise of his implied authority because he has not explained why the Rules "are 'necessary' to effectuate the other authority he claims from Section 41.006." But the Rules are a proper exercise of the

5

Attorney General's implied rulemaking power because they inject order and predictability into an otherwise ad-hoc information-reporting process. That is, the Rules provide prosecutors with advance notice of what kind of information the Attorney General desires, and when he desires it, *see* 1 Tex. Admin. Code §§ 56.1-.5, making it more likely that the Attorney General obtains the information that the statute entitles him to receive.

**3.** The prosecutors' final line of argument is to turn to statutory history, but they misread it. *See* Appellees.Br.41-47. The prosecutors previously argued that the reporting statute "contemplates ad-hoc information gathering." Emergency Motion at 3. Now, they have examined the statute's history and reached the remarkable conclusion that "it does not grant any power to the Attorney General at all." Appellees.Br.42. That reading of statutory history doubly violates the canons against ineffectiveness and surplusage. Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 63, 174 (2012); *see In re CenterPoint Energy Hous. Elec., LLC*, 629 S.W.3d 149, 159 (Tex. 2021). "When construing a statute, the Court must presume that every word of the legislation has meaning." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 169 (Tex. 2004). But "[w]hen a statutory construction renders an entire subparagraph meaningless . . . the canon against surplusage applies with special force." *Pulsifer v. United States*, 601 U.S. 124, 125 (2024) (citation omitted).

That the prosecutors' reading of history renders an entire statutory provision dead letter demonstrates only that their reading is wrong.[1]

In 1879, the Code of Criminal Procedure contained three provisions relevant here: articles 29, 30, and 40. Article 29 required the Attorney General to provide reports to the Governor on an enumerated list of topics about criminal matters. Tex. Code Crim. Proc. tit. 1, ch. 2, art. 29 (1879). Right below it, article 30 explained that the Attorney General "may require the several district and county attorneys . . . to communicate to him at such times as he may designate, and in such form as he may prescribe, all the information necessary *for his compliance with the requirements of the preceding article.*" *Id.* art. 30 (emphasis added). Separately, article 40, substantively identical to the modern reporting statute, stated that "[d]istrict and county attorneys shall, when required by the attorney-general, report to him at such times, and in accordance with such forms as he may direct, such information as he may desire in relation to criminal matters and the interests of the state, in their districts and counties." *Id.* art. 40.

Thus, in 1879, the Attorney General had two statutes from which to request information from local prosecutors. Article 30 was textually tied to the gubernatorial-reporting requirement, announcing that prosecutors had to give the Attorney General "all the information necessary for his compliance with the requirements of the preceding article," *id.* art. 30, meaning the list of topics in article 29. But separately,

---

[1] Middleton suggests that the Court should examine legislative history, as opposed to statutory history, to interpret the reporting statute. Middleton.Br.17-18. That is impermissible. *See* Appellants.Br.14-15.

article 40, now the modern reporting statute, permitted the Attorney General to request any information "as he may desire in relation to criminal matters and the interests of the state." *Id.* Article 30 was just for the gubernatorial-reporting requirement, but article 40 was not tied to that report.

The prosecutors call (at 44) article 40 "merely an auxiliary to Article 30," but fail to explain how that could be true when article 40 conveys more power than article 30 and is not textually tied to the gubernatorial-reporting requirement in article 29. They also contend (at 44) that the 1879 Code of Criminal Procedure "contained no other grant of authority to which Article[] 40 . . . could be related," *id.*, but ignore that article 40 was *itself* a grant of authority—it stated that prosecutors "shall, when required by the attorney general, report to him," Tex. Code Crim. Proc. tit. 1, ch. 2, art. 40 (1879).

In 1925, articles 29 and 40 were recodified and placed in different titles. Tex. Rev. Civ. Stat. tit. 70, ch. 4, art. 4413 (1925); *id.* tit. 15, art. 333. At the same time, article 30 was repealed. Appellee.Br.46. So what remained was the modern reporting statute, now placed in a different title to confirm that it was never tied to the gubernatorial-reporting requirement in the first instance. So the issue is not whether repealing article 30 could "transform an auxiliary provision into a grant of authority." Appellees.Br.46. Article 40 has always been a grant of authority.

But even if article 40, now the modern reporting statute, were originally a mere "auxiliary" provision detached from its mothership of article 30, it would still provide an independent grant of authority today. "At the time a statute is enacted, it may have a range of plausible meanings. Over time, however, subsequent acts can

shape or focus those meanings." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000). When related statutes are repealed, courts must still give meaning to statutes that were *not* repealed, or else those statutes become surplusage.

Finally, the prosecutors contend (at 47) that the reporting statute previously stated that prosecutors "shall, when required by the Attorney General, report to him at such times and in such forms as he may direct, such information as he may desire." They then suggest (at 47) that the deletion of the phrase "when required by the Attorney General," means that the statute gives him no independent authority. But they again ignore the term "shall report." The word "shall" is mandatory. *S.C.*, 650 S.W.3d at 443.

Middleton also attempts to find significance in nineteenth-century constitutional amendments altering the Attorney General's powers to superintend prosecutors and to pursue criminal cases. Middleton.Br.37-38. That those amendments might have limited the Attorney General's authority in those areas says nothing about the meaning of the distinct reporting statute.

### B. The Rules do not exceed the scope of the reporting statute.

As the Attorney General has explained, the Rules do not exceed the scope of his authority under the reporting statute. Appellants.Br.15-17. Instead of imposing additional burdens, conditions, or restrictions in excess of, or inconsistent with, the reporting statute, the Rules narrow the scope of information that the Attorney General might otherwise be entitled to receive and focus prosecutors' obligations by providing detail on the timing and form of their reports. Appellants.Br.16-17. The prosecutors' three counterarguments should not carry the day.

9

**1.** The prosecutors first argue (at 49-50) that the Rules run "contrary to the general objective" of the statute, because instead of "aid[ing] the gathering of 'information,'" the Rules "attempt to regulate the primary function of county and district attorneys." Not so. Prosecutors' "primary function is to prosecute the pleas of the state in criminal cases," *State v. Stephens*, 663 S.W.3d 45, 50 (Tex. Crim. App. 2021) (citation omitted), but the counties do not point to a single provision in the Rules that purports to tell prosecutors how to prosecute cases, much less that allows the Attorney General to superintend that process. Instead, the operative provisions of the Rules require only that prosecutors provide information to the Attorney General. *See* 1 Tex. Admin. Code §§ 56.3-.5. That is precisely the "aid[ing] the gathering of information," the prosecutors concede (at 49) is the aim of the reporting statute.

The prosecutors' only response is to point to language in the Rules' preamble stating that the Rules will help to ensure that prosecutors comply with the law. Appellees.Br.49 (citing 50 Tex. Reg. 2173, 2174). But courts "interpret administrative rules, like statutes, under traditional principles of statutory construction." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011). And "statements of purpose . . . cannot override a statute's operative language." *Sturgeon v. Frost*, 587 U.S. 28, 57 (2019) (cleaned up); *see Malouf v. State ex rel. Ellis*, 694 S.W.3d 712, 730 (Tex. 2024) ("we must 'look to the statute's text to determine the policy choices that the Legislature made when deciding how to achieve' its purpose"); *see also* Scalia & Garner *supra* at 220. Again, here the operative language of the Rules, 1 Tex. Admin. Code §§ 56.3-.5, sets forth prosecutors' reporting obligations; they confer no supervisory authority over prosecutors.

**2.** The prosecutors next argue (at 50-51) that one of the Rules' "compliance" mechanisms—specifically, their announcement that OAG might file a quo warranto petition if a reporting entity fails to meet its obligations under the Rules, 1 Tex. Admin. Code § 56.8(1)-(2)—exceeds the scope of the Attorney General's authority under the reporting statute, because this provision shows the rules "were designed to intrusively monitor the operations of certain district and county attorneys."

But the prosecutors muster no response to the Attorney General's argument (at 21) that a provision that spells out consequences for noncompliance is "reasonably necessary" for the Attorney General to "fulfill [his] express functions or duties" to gather information under section 41.006. *City Pub. Serv. Bd.*, 53 S.W.3d at 316, because those consequences incentivize district and county attorneys to comply with the Attorney General's directives rather than ignore them. This compliance provision thus ensures that the Attorney General may obtain the information the Legislature has authorized him to request; consequently, it falls well within the reporting statute's broad grant of authority. *See* Appellants.Br.21.

Nor do the prosecutors respond to the Attorney General's argument (at 22-24) that they lack standing to challenge this remedial provision because it is only one of several remedies available to the Attorney General under the Rules; that section 56.8 merely acknowledged pre-existing quo-warranto authority that the Attorney General has under the Constitution and statutes; and that, in any event, section 56.8 would be severable from the remainder of the Rules.

Middleton argues (at 21-27) that 1 Texas Administrative Code section 56.8(1)-(2), exceeds the scope of *other* statutes—namely, Texas Local Government Code

11

chapter 87, under which he argues only a prosecutor can initiate proceedings to remove county officers from office, and Texas Civil Practice and Remedies Code chapter 66, which governs quo warranto proceedings and which he argues would not be applicable because refusing to follow administrative rules is not a recognized ground for quo warranto.

But section 56.8(1)-(2) does not exceed the Attorney General's authority under the reporting statute because it does not give the Attorney General any new authority. For example, the Attorney General's announcement that he "may file" a quo warranto petition if a county violates the Rules merely states pre-existing authority he possesses. Tex. Civ. Prac. & Rem Code § 66.002; 1 Tex. Admin. Code § 56.8(2). Middleton's quibbling over whether such a petition would ultimately be successful—that is, whether a refusal to follow the Rules may be a *ground* for quo warranto under the common law, *see* Middleton.Br.24-27—is irrelevant to the first-order question of whether the Attorney General can announce he may file a petition in the first place.

Relatedly, announcing that failure to comply with the rules may be "official misconduct" within the meaning of a different removal statute is nothing more than an interpretation of that statute. 1 Tex. Admin. Code § 56.8(1) (citing Tex. Loc. Gov't Code § 87.011). "Legislative rules are ones with the 'force and effect of law,' while interpretative rules 'advise the public of the agency's construction of statutes and rules which it administers.'" *Mock v. Garland*, 75 F.4th 563, 578 (5th Cir. 2023) (citation omitted). "As a result, '[a] court is not required to give effect to an interpretative regulation.'" *Id.* (citation omitted). Courts will ultimately decide what statutes

mean and adjudicate removal proceedings. *Cf.* Tex. Gov't Code § 2001.042 (new statute abolishing agency-deference doctrines).

**3.** Last, the prosecutors question (at 51-52) how the reporting statute permits the Attorney General to promulgate rules requiring prosecutors to give him copies of documents in their possession. They assert (at 51-52) that even though the reporting statute requires prosecutors to give the Attorney General any "information" he "desires" and in the "form" that he directs, Tex. Gov't Code § 41.006, the word "form" does not contemplate documents but mere "prosecution statistics." But even their definitions of the word "form" do not help them. According to the counties, the word "form" means the "shape and structure" of the "sets of required information." Appellees.Br.52. If that is so, then "form" includes the original and unaltered "shape and structure" of the information. In other words, the word "form" encompasses a piece of information's original form. Any other interpretation would mean that the reporting statute *requires* the Attorney General to receive information in a modified form.

Middleton also suggests (at 29) that the Rules' provision stating that the Attorney General may request case files that he "desires relating to criminal matters and the interests of the state on a case-by-case-basis," 1 Tex. Admin. Code § 59.6(c), somehow conflicts with a new statute permitting the Attorney General to request information from law-enforcement agencies if the Attorney General is representing the State in the prosecution of certain crimes, *see* Tex. Gov't Code § 402.102(b). Middleton misses the mark. That Rule parrots the language of the reporting statute, the reporting statute permits the Rule, and the reporting statute does not conflict

13

with that new law. One allows the Attorney General to request information generally, and the other applies only when the Attorney General is prosecuting certain kinds of criminal cases. *See id.* That the two statutes may contain some overlap in application does not mean they conflict.

### C.  The Rules do not violate the APA.

The Attorney General has also explained why the Rules substantially comply with the APA's reasoned-justification requirement. Appellants.Br.24-29; Tex. Gov't Code § 2001.033(a)(1). That is because the order adopting the Rules "include[s] how and why the [OAG] reached the conclusions it did for adopting the rule, and the conclusions" are "presented in a relatively clear, precise, and logical fashion." *Tex. Workers Comp. Comm'n v. Patient Advocs. of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004). The prosecutors' four rejoinders lack merit.

*First*, the prosecutors argue that the Rules do not list "the names of interested groups or associations offering comment on the rule and whether they were for or against its adoption." Appellees.Br.54 (quoting Tex. Gov't Code § 2001.0033(a)(1)(a)). But the prosecutors offer no explanation why this is not a "mere technical defect that does not result in prejudice to" them—and therefore "not grounds for invalidation of [the] rule[s]." Tex. Gov't Code § 2001.035(d).

*Second*, the prosecutors argue (at 54-55) that the Attorney General cannot show that the Rules are "a reasonable means to a legitimate objective," because he cannot fulfill his purpose of "ensur[ing] that county and district attorneys are consistently complying with statutory duties," 50 Tex. Reg. 2173, if the Rules only apply to the thirteen largest counties in the State. Not so.

Courts "review a challenge to the reasoned-justification requirement using an 'arbitrary and capricious' standard." *Farm & Ranch Freedom All. v. Tex. Dep't of Agric.*, No. 03-23-00459-CV, 2025 WL 994190, at *7 (Tex. App.—Austin Apr. 3, 2025, no pet.). The touchstone is "rationality." *Id.* at *6. That means an agency cannot "omit[] from its consideration a factor the legislature intended the agency to consider," "include[] in its consideration an irrelevant factor," or "reach[] a completely unreasonable result after weighing only relevant factors." *Id.* at *7. There is nothing "arbitrary," "unreasonable," or irrational about the Attorney General's conclusion that "data from the largest counties in the state . . . will indicate trends for all counties in the state," 50 Tex. Reg. at 2177, since those counties have the largest volume of crime. The prosecutors may think that data from a greater raw number of counties would better reflect statewide trends, but it was not unreasonable for the Attorney General to conclude that population is the better gauge.

*Third*, the prosecutors argue (at 55-56) that the Attorney General did not "meaningfully engage" with their concerns in comment letters about "financial costs and other burdens." But the Attorney General explained in comments that compliance costs should be minimal, including because reporting entities "currently routinely submit their entire case files, including all of the types of information specified in the comments, to the OAG in various manners and in compliance with other statutes that only generally require disclosure of information to the OAG." Appellants.Br.27 (citing 50 Tex. Reg. at 2176). The prosecutors' dissatisfaction with the depth of the Attorney General's response hardly makes it arbitrary and capricious.

15

*Fourth*, and relatedly, the prosecutors argue (at 56-57) that the *proposed* rule did not comply with section 2001.024's requirements that the notice describe "the estimated loss . . . in revenue" associated with administering or enforcing the Rules and "the probable economic cost to persons required to comply with the rule." Tex. Gov't Code § 2001.024(a)(4)(C), (5)(B). But these requirements do not mean "that an agency must in every case assign a monetary amount to the expected public benefits and costs of compliance." *Methodist Hosps. of Dall. v. Tex. Indus. Accident Bd.*, 798 S.W.2d 651, 656 (Tex. App.—Austin 1990, writ dism'd w.o.j.). And here, the Attorney General's notice identified the costs: those needed to purchase scanners and hire administrative assistants, which would be "minimal and likely absorbed into reporting entities' ongoing operations." 49 Tex. Reg. 7140. That is all the APA requires.

## D. The Rules do not violate the Separation of Powers Clause.

The Attorney General has also explained that the Rules do not violate the separation of powers because they do not impair prosecutors from carrying out their constitutional responsibilities to prosecute cases. Appellants.Br.29-33. In response, the prosecutors make a series of arguments based on the Rules' purpose rather than their operative provisions and even suggest that any time one branch of government imposes any form of burden on another, a constitutional violation occurs. That argument has no limiting principle, and each of the prosecutors' three responses should be rejected.

*First*, the prosecutors assert (at 59, 60) that the Rules violate the separation of powers because they "assume (or at least unduly interfere with) the Judicial Department's assigned prosecutorial function and authority" by "claiming authority to supervise and oversee the elected officials assigned that role." Nothing in the text of the Rules remotely supports this theory. The Rules require only that prosecutors provide certain forms of information to the Attorney General. *See* 1 Tex. Admin. Code §§ 56.3-.5. But nowhere do the Rules purport to give the Attorney General supervisory authority over local prosecutors—he does not claim any authority to approve or disapprove prosecutorial decisions, hire and fire line attorneys, try or appeal cases, or meddle with prosecutors' dockets. He is merely empowered by the Legislature to obtain information from those prosecutors about their prosecutorial decisions. That is a far cry from "regulat[ing] the county and district attorneys and their prosecutorial decisions." Appellees.Br.60.

Middleton relatedly suggests that the Rules violate the separation of powers because they permit the Attorney General to "collaterally attack" and second-guess prosecutors' decisions to file suit, make arguments, and assess evidence. Middleton.Br.43-45 (citing *Webster v. Comm'n for Law. Discipline*, 704 S.W.3d 478, 502 (Tex. 2024)). That is wrong too. *Webster* involved the State Bar's attempt to discipline the First Assistant Attorney General because it disagreed with his decision to file a certain lawsuit. 704 S.W.3d. at 483. But the Rules do not permit the Attorney General to do anything like that, and Middleton's argument (at 44) that the Rules authorize the Attorney General to superintend, overrule, sanction, or "collaterally attack," a prosecutor's decisions lacks any textual basis.

17

*Second*, the prosecutors also contend (at 60-62) that the Rules violate the separation of powers because they improperly interfere with the function of prosecutors. But at the outset they apply the wrong standard. They contend that "'*any* attempt by one department of government to interfere with the powers of another is null and void,' regardless of the magnitude of that attempt, unless that attempt is 'authorized by an express constitutional provision.'" Appellees.Br. 62 (quoting *Stephens*, 663 S.W.3d at 50). But *Stephens* does not bind this Court, and its holdings conflict with more recent authority from the Texas Supreme Court.

*Stephens* held that a Texas Supreme Court opinion "appears to misstate the standard of review as to when one branch of government may exercise powers of another branch" by "opin[ing] that the line is crossed if the Legislature 'took away from the county attorneys as much of their duties as to practically destroy their office.'" 663 S.W.3d 54 (quoting *Brady v. Brooks*, 89 S.W. 1052, 1056 (Tex. 1905)). *Stephens* called that "an incorrect standard of review to apply when analyzing a separation of powers violation." *Id*.

This Court must be guided by the rulings of the Supreme Court, not the CCA, on this civil-law question. *See Shrader v. Ritchey*, 158 Tex. 154, 156-57 (Tex. 1958). That is particularly so given that just last year the Supreme Court acknowledged that one branch may constitutionally impose burdens on another. For example, "discovery is obviously a proper judicial tool, but the U.S. Supreme Court has observed that, in extraordinary cases, a court could violate the separation of powers by authorizing discovery that 'interfer[es] with a coequal branch's ability to discharge its constitutional responsibilities.'" *In re Tex. House of Representatives*, 702 S.W.3d 330, 344-45

18

(Tex. 2024) (orig. proceeding) (citation omitted). Similarly, the Legislature may issue burdensome subpoenas to the executive branch in most cases, even though that power has narrow limits such that a court could not enforce "a legislative subpoena that would require canceling a long-scheduled execution." *Id*. at 346. So, it is constitutional for one branch of government to impose a burden on another. What one branch cannot do is "impair another in the performance of its constitutional duties," and the judicial "solution—often easier said than done—is to ensure that no branch is exercising its core authority in a way that negates the ability of a coordinate branch to do so." *Id*. at 344. That is, one branch cannot "effectively usurp or undermine the constitutional prerogatives of the other branches of government." *Id*. at 347.

The prosecutors have articulated no limiting principle for their argument that any interference or friction between the branches is unconstitutional. *See* Appellees.Br.62. That would render multiple statutes unconstitutional. For example, "each state agency, department, and office shall assist any legislative committee that requests assistance." Tex. Gov't Code § 301.028(a), (b). Similarly, the Public Information Act requires executive-branch agencies to provide information, including confidential information, to the Legislature upon request. Tex. Gov't Code § 552.008(b). Both of these statutes necessarily impose burdens on the executive branch. They permit the Legislature to request reams of documents and compel the attendance of many members of the executive branch at legislative hearings. Under the prosecutors' theory, these statutes would be unconstitutional.

In any event, the proper separation-of-powers standard is whether one branch "is exercising its core authority in a way that negates the ability of a coordinate

19

branch to do so," or if one branch is exercising authority in a way to "effectively usurp or undermine the constitutional prerogatives of the other branches of government." *In re Tex. House*, 702 S.W.3d at 344, 347. The prosecutors cannot meet that standard. The Attorney General pointed out that the evidence showed that the prosecutors can still prosecute cases despite the Rules. Appellants.Br.32. The prosecutors do not discuss that evidence. Appellees.Br.61-62. Rather they incorrectly suggest that the trial court's "finding of interference through resource diversion" is somehow a fact finding entitled to deference. Appellees.Br.61. But whether an exercise of executive power "interferes" with the duties of another branch such that it violates the separation of powers is a legal conclusion, not a factual finding. *See In re Tex. House*, 702 S.W.3d at 344, 347. Nor are "resource diversions" or "decreasing" ability to prosecute cases a constitutional violation. *Cf. FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394-95 (2024). Every legislative subpoena or judicial order compelling discovery directed to the executive branch necessarily diverts resources or "decreases" that branch's ability to do its job to some extent. So unless all of those things are unconstitutional, the prosecutors' separation-of-powers claim fails.

*Third*, the prosecutors briefly contend (at 63) that the reporting statute is unconstitutional because it violates the nondelegation doctrine. But the trial court listed its reasons for granting the temporary injunction and did not rule on that claim. CR.392-93. Because this is a court of review, "and not first view," it ordinarily does "not decide in the first instance issues not decided below." *Rattray v. City of Brownsville*, 662 S.W.3d 860, 870 (Tex. 2023). Regardless, the prosecutors' claim fails. "The non-delegation doctrine has come to be understood not as a categorical prohibition

on the Legislature granting authority to other branches of government, but as a requirement that, in order to do so, the Legislature must provide standards that are 'reasonably clear and hence acceptable as a standard of measurement.'" *Abbott v. Harris County*, 672 S.W.3d 1, 16 (Tex. 2023) (citation omitted).

"Successful delegation challenges are few and far between." *Id*. During the COVID-19 pandemic, for example, the Supreme Court examined a nondelegation challenge to the Disaster Act, a statute that the Governor employed during that time. Although the Court did not decide whether that statute was unconstitutional, it observed that in the context of the pandemic, "a broad reading of the Disaster Act gives rise to extensive gubernatorial law-making authority over nearly every aspect of economic and social life throughout the State." *Id*. The Court noted that whether the Disaster Act's "standards guiding the Governor's exercise of such vast discretion are reasonably clear and hence acceptable as a standard of measurement is a serious question." *Id*. at 17 (internal citation omitted). By contrast, the reporting statute supplies the Attorney General with only an information-gathering power, and that power applies only to prosecutors. Those standards are "reasonably clear and hence acceptable as a standard of measurement." *Id*. at 16.

## II. The Equities Favor the Attorney General.

The prosecutors have failed to show a probable right to relief, so the Court need not address the equities because the temporary-injunction standard is a conjunctive test. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). And the prosecutors will suffer no cognizable injury by being required to follow valid law. *In re*

*State*, 711 S.W.3d 641, 648 (Tex. 2024). Regardless, the equities favor the Attorney General.

## A. The Attorney General did not waive the issue of irreparable harm.

The prosecutors first suggest that the Attorney General waived the issue of irreparable harm. Appellees.Br.66. That is wrong. "[A] party sufficiently preserves an issue for review by arguing the issue's substance, even if the party does not call the issue by name." *Li v. Pemberton Park Cmty. Ass'n*, 631 S.W.3d 701, 704 (Tex. 2021) (per curiam). And an "issue or point will be treated as covering every subsidiary question that is fairly included." Tex. R. App. P. 38.1(f).

In his opening brief, the Attorney General explained (at 34) that the prosecutors "must plead and prove" a "probable, imminent, and irreparable injury in the interim." He later argued (at 35) that the prosecutors are "not harmed by being required to follow the law," and did not have imminent and irreparable harm, including because they could have sought an exception or extension to the Rules. And he contended (at 36) that the prosecutors were not irreparably harmed by "the forced disclosure of legally protected confidential information" because they have yet to discuss what those laws are. So even if the Attorney General did not "call the issue by name," he still preserved the issue of irreparable harm for review. *Li*, 631 S.W.3d at 704.

Nor does it matter whether the Attorney General challenged all of the trial court's alleged factual findings. *Contra* Appellees.Br.65-66. First, most of the "findings" to which the prosecutors refer are actually legal conclusions. What the Rules require the prosecutors to do and whether they require the disclosure of confidential

22

or privileged information are questions of law. *Cf.* Appellees.Br.65. More importantly, whether the trial court's factual findings amount to imminent and irreparable harm is a legal conclusion too, as the prosecutors concede. Appellees.Br.66. So the Attorney General has waived nothing, and the issue of harm is reviewable as a question of law.

## B. The harm to the Attorney General outweighs any harm to the prosecutors.

At the outset, the prosecutors argue (at 66) that the trial court did not "abuse its discretion" by holding that they will suffer irreparable harm. But whether certain facts rise to the level of irreparable harm is a legal conclusion, and "[a] trial court has no discretion to misapply the law," so the Court "review[s] its legal determinations de novo." *TEA v. Hous. ISD*, 660 S.W.3d 108, 116 (Tex. 2023). The prosecutors contend that the abuse-of-discretion standard means that "a balancing of the equities is not even part of this Court's review." Appellees.Br.72. That is wrong: An "essential consideration attendant on any request for injunctive relief . . . is the injury that will befall *either party* depending on the courts' decision." *In re State*, 711 S.W.3d at 645 (emphasis added). "The equitable balancing of these harms is . . . required," *id.*, and that includes on appeal too, as the Texas Supreme Court did, *see id.* at 647-48.

1. The prosecutors offer five ways in which they will allegedly suffer irreparable harm from the Rules' enforcement. They contend that they will have to file reports, "suffer significant fiscal costs" in doing so, have to disclose confidential information, divert resources to comply, and suffer a separation of powers violation. Appellees.Br.67-70. None has merit.

As an initial matter, no separation-of-powers violation has occurred, *supra* at 16-21, so that cannot create irreparable injury. Nor can supposed confidentiality concerns. The prosecutors have had multiple chances before this Court to identify which confidentiality laws they would have to violate in order to comply with the Rules; they have yet to discuss any specifically. *See* Emergency Motion at 11; Appellees.Br.68. And as the Attorney General explained (at 18-19), even if certain aspects of the Rules require the prosecutors to disclose confidential information, they can request an exception, and if the Attorney General refuses, they can bring an as-applied challenge to that decision. So any harm is not "imminent" or "irreparable."

Middleton discusses one confidentiality statute, a provision in the Code of Criminal Procedure prohibiting the disclosure of grand-jury material. Middleton.Br.53. But Middleton lacks standing to make that argument. The only part of the Rules that might cover grand-jury material include case files for instances in which a prosecutor makes certain recommendations to a court based on a confession of error, case files for prosecutions in which the Governor is considering a pardon, and case files that the Attorney General may choose to request in the future. 1 Tex. Admin. Code § 56.3(a)(4)-(6). It is Middleton's burden to establish that he has case files that fit those categories before he may raise this argument. *Abbott v. Mex. Am. Legis. Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 693 (Tex. 2022). Certainly, whether the Attorney General will request any case files from him in the future that contain grand-jury material is speculative.

At most, then, the prosecutors' harm is compliance costs and resource diversion. That harm is minimal. The Attorney General explained that the prosecutors

24

can solve these problems by hiring more people, and pointed to the prosecutors' own evidence showing how they would not need many new employees in proportion their sizes, and that some prosecutors have already sought additional funding to do so. Appellants.Br.32. The prosecutors call this argument "wrong and without evidentiary support." Appellees.Br.69. But the Attorney General cited the record, and the prosecutors cited nothing. Appellees.Br.69.

2. By contrast, the Attorney General and the public will suffer greater harm. That is because "ultra vires conduct automatically results in harm to the sovereign as a matter of law," such that "a showing of likelihood of success on the merits is sufficient to satisfy the irreparable-injury requirement for a temporary injunction." *State v. Hollins*, 620 S.W.3d 400, 410 (Tex. 2020) (per curiam). The prosecutors suggest that rule applies only when the State is a plaintiff bringing an ultra vires suit against other government entities, not the other way around. Appellees.Br.74. Not so. If a county refuses to comply with a state law and brings an ultra vires suit against the State and prevails, then the county is not committing ultra vires conduct, and the State is not harmed. But if the county refuses to follow the law, sues, and loses, then it is not in compliance with a valid law and is acting ultra vires, which harms the State. In the temporary-injunction posture, if the State shows a likely success on the merits, then it also suffers irreparable harm as a matter of law because the county in that situation is violating a valid law. *See Hollins*, 620 S.W.3d at 410. Whether the State is plaintiff or defendant in an ultra vires suit, the State's showing of likelihood of success on the merits also shows irreparable harm. *Id.*

25

Relatedly, the prosecutors contend (at 75) that they "cannot violate the Challenged Rules while the injunction is in effect," such that there is no violation of the Rules to work harm on the State. But that is the writ-of-erasure fallacy. A temporary injunction, like the one issued here, does not excise the Rules from the Texas Register. Rather, they "enjoin[] and restrain[]" defendants from "enforcing the Challenged Rules." CR.394. "Courts have 'no authority to erase a duly enacted law from the statute books, and they have no power to veto or suspend a statute. The power of judicial review is more limited: It permits a court to decline to enforce a statute in a particular case or controversy, and it permits a court to enjoin executive officials from taking steps to enforce a statute—though only while the court's injunction remains in effect.'" *State ex rel. Off. of Att'y Gen. of Tex. v. City of San Marcos*, 714 S.W.3d 224, 244 (Tex. App.—15th Dist. 2025, pet. filed) (citing Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 936 (2018)). So the prosecutors are presently violating the Rules and thus inflicting irreparable harm on the State; the State just cannot enforce the Rules now because of the injunction.

The prosecutors next suggest (at 76-77) that the public will be harmed absent an injunction by asserting that the State plans to act in bad faith. They point (at 77) to testimony suggesting that it may be difficult to work with crime victims if a county attorney has to give the Attorney General's office "confidential information" because it would be difficult to tell a crime victim to "trust this nameless, faceless agency at the Attorney General because they said they won't disclose it." The court should not entertain that accusation, given the "presumption of regularity, good faith, and legality" afforded to government actors. *Webster*, 704 S.W.3d at 501.

26

## C. The temporary injunction disrupts the status quo.

The prosecutors assert (at 71) that the temporary injunction preserves the status quo because the Rules are new. That is wrong. Initially, discussing the status quo is not particularly useful. Discussing "preservation of the status quo" "offer[s] little help to" courts because "debates about how to define the status quo can descend quickly into lawyerly word-play." *In re State*, 711 S.W.3d at 644. In any event, the existence of the Rules *is* the status quo because they have been published for months. *See* Order, *In re Abbott*, No. 21-0720 (Tex. Aug. 26, 2021) (The status quo "for many months, [had] been gubernatorial oversight of such decisions at both the state and local levels."); *see Harris County*, 672 S.W.3d at 5.

## III. The Trial Court's Order Is Impermissibly Overbroad.

The Attorney General explained (at 36) that the trial court's injunction was overbroad because it "enjoined enforcement of the Rules against anyone subject to them," including nonparties. The prosecutors continue to press their writ-of-erasure theory, arguing that a universal injunction is appropriate. *See* Appellees.Br.78. But this Court's reasoning for rejecting the writ-of-erasure fallacy also explains why universal injunctions are improper: "The power of judicial review is more limited: [i]t permits a court to decline to enforce a statute *in a particular case or controversy*." *City of San Marcos*, 714 S.W.3d at 244 (emphasis added); *see also Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2550-54 (2025).

Middleton suggests that the trial court may issue a universal injunction because the federal APA authorizes vacatur of agency rules via that statute's "set-aside" authority. *See* 5 U.S.C. § 706(2); Middleton.Br.54. But Middleton misunderstands the

distinction between a federal court's equitable powers, under which entering a universal injunction binding nonparties is impermissible, with its statutory power to vacate unlawful agency actions. *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 838 (2024) (Kavanaugh, J., concurring). Middleton points to no Texas law equivalent of the federal APA's "set-aside" language, and the trial court entered injunctive relief, not vacatur. *See* CR.394.

## PRAYER

The Court should reverse the trial court's order granting a temporary injunction.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

WILLIAM R. PETERSON
Solicitor General

/s/ William F. Cole
WILLIAM F. COLE
Principal Deputy Solicitor General
State Bar No. 24124187
William.Cole@oag.texas.gov

BENJAMIN WALLACE MENDELSON
Assistant Solicitor General

*Counsel for Appellants*

28

## CERTIFICATE OF COMPLIANCE

Microsoft Word reports that this brief contains 7,499 words, excluding exempted text.

/s/ William F. Cole
WILLIAM F. COLE

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Maria Mendoza-Williamson on behalf of William Cole
Bar No. 24124187
maria.williamson@oag.texas.gov
Envelope ID: 105356991
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Garza Reply Brief
Status as of 9/9/2025 7:07 AM CST

Associated Case Party: Harris County

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher Garza | 24078543 | christopher.garza@harriscountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Jonathan Fombonne | 24102702 | jonathan.fombonne@harriscountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Tiffany Bingham | 24012287 | tiffany.bingham@harriscountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Andrea Mintzer | | andrea.mintzer@harriscountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Andrea Mintzer | | andrea.mintzer@harriscountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Bradely W.Snead | | snead@wrightclosebarger.com | 9/8/2025 7:00:32 PM | SENT |

Associated Case Party: JoseP.Garza

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Cynthia Veidt | 24028092 | cynthia.veidt@traviscountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Christina Sanchez | 24062984 | christina.sanchez@epcounty.com | 9/8/2025 7:00:32 PM | SENT |
| Leslie W.Dippel | | leslie.dippel@traviscountytx.gov | 9/8/2025 7:00:32 PM | SENT |

Associated Case Party: Ken Paxton, in his Official Capacity as Attorney General of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William FCole | | William.Cole@oag.texas.gov | 9/8/2025 7:00:32 PM | SENT |
| Eric Abels | | Eric.Abels@oag.texas.gov | 9/8/2025 7:00:32 PM | SENT |
| Ben Mendelson | | Ben.Mendelson@oag.texas.gov | 9/8/2025 7:00:32 PM | SENT |
| William H. Farrell H.Farrell | | bill.farrell@oag.texas.gov | 9/8/2025 7:00:32 PM | SENT |
| Jacob Beach | | Jacob.Beach@oag.texas.gov | 9/8/2025 7:00:32 PM | SENT |

Case Contacts

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Maria Mendoza-Williamson on behalf of William Cole
Bar No. 24124187
maria.williamson@oag.texas.gov
Envelope ID: 105356991
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Garza Reply Brief
Status as of 9/9/2025 7:07 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Nicole A.Myette | | nicole.myette@oag.texas.gov | 9/8/2025 7:00:32 PM | SENT |
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 9/8/2025 7:00:32 PM | SENT |
| William Farrell | | biff.farrell@oag.texas.gov | 9/8/2025 7:00:32 PM | SENT |
| Amanda Ruch | | amanda.ruch@oag.texas.gov | 9/8/2025 7:00:32 PM | SENT |
| William H. Farrell | | bill.farrell@oag.texas.gov | 9/8/2025 7:00:32 PM | SENT |
| Leslie W. Dippel | | Leslie.Dippel@traviscountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Todd A. Clark | | Todd.Clark@traviscountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Cynthia W. Veidt | | Cyntia.Vedt@traviscountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Jonathan G.C. Fombonne | | Jonathan.Fombonne@harriscountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Tiffany S. Bingham | | Tiffany.Bingham@harriscountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Christopher Garza | | Christopher.Garza@harriscountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Justin C. Pfeiffer | | jpfeiffer@gavrilovlaw.com | 9/8/2025 7:00:32 PM | SENT |
| Christina Sanchez | | Ch.sanchez@epcountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Joshua Woods | | woods@wrightclosebarger.com | 9/8/2025 7:00:32 PM | SENT |
| Bradley W.Snead | | snead@wrightclosebarger.com | 9/8/2025 7:00:32 PM | SENT |
| Michael Adams-Hurta | | hurta@wrightclosebarger.com | 9/8/2025 7:00:32 PM | SENT |
| Cynthia W.Veidt | | cynthia.veidt@traviscountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Bernardo Rafael Cruz | | b.cruz@epcountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| C. RobertHeath | | bheath@bickerstaff.com | 9/8/2025 7:00:32 PM | SENT |
| Randy T. Leavitt | | randy@randyleavitt.com | 9/8/2025 7:00:32 PM | SENT |
| Alexandria Oberman | | aoberman@milchev.com | 9/8/2025 7:00:32 PM | SENT |
| Michael J. Statin | | mstatin@milchev.com | 9/8/2025 7:00:32 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Maria Mendoza-Williamson on behalf of William Cole
Bar No. 24124187
maria.williamson@oag.texas.gov
Envelope ID: 105356991
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Garza Reply Brief
Status as of 9/9/2025 7:07 AM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Michael J. Statin | | mstatin@milchev.com | 9/8/2025 7:00:32 PM | SENT |
| Laura G. Ferguson | | lferguson@milchev.com | 9/8/2025 7:00:32 PM | SENT |
| Amy Pollock | | amy.pollock@traviscountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Maria Williamson | | maria.williamson@oag.texas.gov | 9/8/2025 7:00:32 PM | SENT |

Associated Case Party: Dallas County Criminal District Attorney John Cruezot

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Alexandria Oberman | | aoberman@milchev.com | 9/8/2025 7:00:32 PM | SENT |
| Katharine Tafuri | | ktafuri@milchev.com | 9/8/2025 7:00:32 PM | SENT |
| Alexandria Oberman Oberman | | aoberman@milchev.com | 9/8/2025 7:00:32 PM | SENT |
| Michael J.Satin | | msatin@milchev.com | 9/8/2025 7:00:32 PM | SENT |
| Laura G.Ferguson | | lferguson@milchev.com | 9/8/2025 7:00:32 PM | SENT |

Associated Case Party: Delia Garza

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Leslie W.Dippel | | leslie.dippel@traviscountytx.gov | 9/8/2025 7:00:32 PM | SENT |

Associated Case Party: El Paso County District Attorney James Montoya

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Bernardo Cruz | | b.cruz@epcountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Melissa Contreras | | m.contreras@epountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Isela Baeza | | i.baeza@epcountytx.gov | 9/8/2025 7:00:32 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Maria Mendoza-Williamson on behalf of William Cole
Bar No. 24124187
maria.williamson@oag.texas.gov
Envelope ID: 105356991
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Garza Reply Brief
Status as of 9/9/2025 7:07 AM CST

Associated Case Party: El Paso County District Attorney James Montoya

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Isela Baeza | | i.baeza@epcountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Isela Jones | | carl.jones@epcountytx.gov | 9/8/2025 7:00:32 PM | SENT |
| Pamela Lopez | | Pam.Lopez@epcountytx.gov | 9/8/2025 7:00:32 PM | SENT |

Associated Case Party: El Paso County Attorney Christina Sancez

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bernardo Cruz | | b.cruz@epcountytx.gov | 9/8/2025 7:00:32 PM | SENT |

Associated Case Party: El Paso County

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bernardo Cruz | | b.cruz@epcountytx.gov | 9/8/2025 7:00:32 PM | SENT |

Associated Case Party: Bexar County Criminal District Attorney Joe Gonzales

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Alexandria Oberman | | aoberman@milchev.com | 9/8/2025 7:00:32 PM | SENT |
| Michael J. Satin | | msatin@milchev.com | 9/8/2025 7:00:32 PM | SENT |

Associated Case Party: Dallas County

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Alexandria Oberman | | aoberman@milchev.com | 9/8/2025 7:00:32 PM | SENT |